# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

CYNTHIA SPOON,
SOPHIA COOK-PHILLIPS, and
ERIC MOLL,

          Plaintiffs,

    v.

BAYOU BRIDGE PIPELINE LLC, HUB
ENTERPRISES, INC., P&P OFFICER
HERMAN MATHERNE, P&P OFFICER
MARK WARD, P&P OFFICER JON
BARBERA, P&P OFFICER HEATHER M.
PENNINGTON, P&P OFFICER DOUGLAS
BLACK, P&P OFFICER ANGELA ADAMS,
SHERIFF RONALD THERIOT, DEPUTY
SHARAY ARABIE, DEPUTY STACEY
BLANCHARD, DEPUTY TROY DUPUIS,
DEPUTY GABE GAUTHIER, DEPUTY
WAVERSUN GUIDRY, DEPUTY NORRIS
HUVAL, AND DEPUTY CHRIS MARTIN,

          Defendants.

Case No. 3:19-cv-00516-SDD-EWD

## FIRST AMENDED COMPLAINT

    Plaintiffs Cynthia Spoon, Sophia Cook-Phillips, and Eric Moll bring the following

Complaint against Defendants Bayou Bridge Pipeline LLC, HUB Enterprises, Probation and

Parole ("P&P") Officer Herman Matherne, P&P Officer Mark Ward, P&P Officer Jon Barbera,

P&P Officer Heather M. Pennington, P&P Officer Douglas Black, P&P Officer Angela Adams,

St. Martin Parish Sheriff Ronald Theriot, St. Martin Parish Sheriff's Office ("SMPSO") Deputy

Sharay Arabie, SMPSO Deputy Stacey Blanchard, SMPSO Deputy Troy Dupuis, SMPSO

Deputy Gabe Gauthier, SMPSO Deputy Waversun Guidry, SMPSO Deputy Norris Huval, and SMPSO Deputy Chris Martin, alleging as follows:

## Nature of the Action

1.      On August 9, 2018, Defendants acted jointly to unlawfully arrest Plaintiffs, who were peacefully protesting the construction of the Bayou Bridge Pipeline. Boating in a canoe and a kayak on open waters of a bayou, Plaintiffs encountered a construction barge operated by representatives of Bayou Bridge Pipeline, LLC and accompanied by representatives of HUB Enterprises. P&P Officers Adams, Barbera, Black, Matherne, Pennington, and Ward (hereinafter, "P&P Defendants"), along with St. Martin Parish Sheriff's Office deputies Arabie, Blanchard, Dupuis, Gauthier, Guidry, Huval, and Martin (hereinafter, "SMPSO Defendants"), arrested Plaintiffs without probable cause and in retaliation for the exercise of their First Amendment rights. The officers and deputies arrested Plaintiffs at the direction of representatives of Bayou Bridge Pipeline, LLC and HUB Enterprises.

## Jurisdiction and Venue

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

3.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants Pennington and Ward are residents of Ascension and Livingston Parishes. The principal place of business in Louisiana for Defendant Bayou Bridge Pipeline, LLC is Baton Rouge, Louisiana.

## Parties

4.      Plaintiff Cynthia Spoon is a resident of Denton, Texas, and of the full age of majority. She was protesting the construction of the Bayou Bridge Pipeline on August 9, 2018, when Defendants acted jointly to arrest her.

5.      Plaintiff Sophia Cook-Phillips is a resident of Sacramento, California, and of the full age of majority. She was protesting the construction of the Bayou Bridge Pipeline on August 9, 2018, when Defendants acted jointly to arrest her.

6.      Plaintiff Eric Moll is a resident of Oakland, California, and of the full age of majority. He was protesting the construction of the Bayou Bridge Pipeline on August 9, 2018, when Defendants acted jointly to arrest him.

7.      Defendant Bayou Bridge Pipeline, LLC, ("BBP") is a company incorporated in Wilmington, Delaware, and whose principal business establishment in Louisiana is in Baton Rouge. It is a subsidiary of Energy Transfer Partners and Phillips 66 Partners created to build and operate the Bayou Bridge Pipeline. BBP constructed over 185 miles of oil pipeline in Louisiana from 2016 to 2019, stretching from the Texas border to the terminus in St. James Parish. Defendant BBP contracted with Defendant HUB Enterprises to provide security during the construction of the pipeline. Employees and agents of BBP, together with employees and agents of HUB Enterprises, directed Defendants Adams, Barbera, Black, Matherne, Pennington, and Ward to arrest Plaintiffs.

8.      Defendant HUB Enterprises, Inc., ("HUB") is a company incorporated in Louisiana with a principal place of business in Broussard. HUB provides security and investigation services. Defendant HUB contracted with Defendant BBP to provide security during the construction of the pipeline. HUB contracted with the P&P Defendants and the SMPSO Defendants to provide security services to BBP at the pipeline construction site on August 9, 2018. Employees and agents of HUB, together with employees and agents of BBP, directed Defendants Adams, Barbera, Black, Matherne, Pennington, and Ward to arrest Plaintiffs.

9.      Defendant Angela Adams is of the full age of majority and a resident of Thibodaux, Louisiana. She is an officer of the Louisiana Department of Public Safety & Corrections' Division of Probation and Parole ("P&P"). She participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue her in her individual capacity.

10.     Defendant Jon T. Barbera, a.k.a. Barbereau, is of the full age of majority and a resident of Thibodaux, Louisiana. He is a P&P Officer, and he participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his individual capacity.

11.     Defendant Douglas Black is of the full age of majority and a resident of New Orleans, Louisiana. He is a P&P Officer, and he participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his individual capacity.

12.     Defendant Herman Matherne is of the full age of majority and a resident of Thibodaux, Louisiana. He is a P&P Officer, and he participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his individual capacity.

13.     Defendant Heather M. Pennington is of the full age of majority and a resident of Geismar, Louisiana. She is a P&P Officer, and she participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue her in her individual capacity.

14.     Defendant Mark Ward is of the full age of majority and a resident of Denham Springs, Louisiana. He is a P&P Officer, and he participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his individual capacity.

15.     The Defendants listed in paragraphs 9–14 shall be referred to collectively as "the P&P Defendants."

16.     Defendant Ronald Theriot is the Sheriff of St. Martin Parish. He was responsible for the supervision, administration, policies, practices, procedures, and customs of the St. Martin

Parish Sheriff's Office ("SMPSO") on the date of Plaintiffs' arrests. He was responsible for hiring, training, disciplining, and supervising SMPSO command staff, supervisors, and deputies on the date of Plaintiffs' arrests. At all times relevant to the facts alleged in this Complaint, Sheriff Theriot was a final policymaker for SMPSO. Plaintiffs sue him in his individual and official capacities.

17.     Defendant Sharay Arabie is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue her in her official and individual capacities.

18.     Defendant Stacey Blanchard is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue her in her official and individual capacities.

19.     Defendant Troy Dupuis is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his official and individual capacities.

20.     Defendant Gabe Gauthier is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his official and individual capacities.

21.     Defendant Waversun Guidry is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his official and individual capacities.

22.     Defendant Norris Huval is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his official and individual capacities.

23.     Defendant Chris Martin is an SMPSO Deputy who participated in Plaintiffs' arrests on Aug. 9, 2018. Plaintiffs sue him in his official and individual capacities.

24.     One or more of the deputies in paragraphs 17–23, referred to collectively as "SMPSO Defendants"  had supervisory authority over other deputies and was a final policymaker for SMPSO with respect to the making of arrests at the direction of agents of BBP and HUB.

## FACTS RELEVANT TO ALL CLAIMS

### The Coordinated Plan to Silence Protests Against the Bayou Bridge Pipeline

25.     At the time of Plaintiffs' arrests, BBP was attempting construction of a crude oil pipeline crossing 163 miles  from the Texas-Louisiana border to St. James Parish, Louisiana, a stretch referred to as the Bayou Bridge Pipeline ("Pipeline").

26.     The Pipeline was planned to cross Native American land and 700 bodies of water, terminating in St James.

27.     Once completed, the Pipeline would serve as the "final link between fracked oil from the Bakken shale fields of North Dakota and the refineries and export facilities of the Gulf coast."

28.     The Pipeline has been confronted with vehement opposition from environmental activists who argue that its construction greatly exacerbates Louisiana's coastal erosion crisis. In their view, it could contribute to rising sea levels, leaving coastal communities more vulnerable to hurricanes, in addition to threatening wildlife and contaminating drinking water in the surrounding areas.

29.     To silence the growing dissent about the construction of the Bayou Bridge Pipeline, BBP and HUB contracted with law enforcement officials to make felony arrests of protesters of the Pipeline.

30.     Protests of the Bayou Bridge Pipeline had taken place prior to August 2018. In those protests, persons were arrested, charged with misdemeanors, and released.

31.     However, on August 1, 2018, an amendment of La. R.S. § 14:61, "Unauthorized entry of a critical infrastructure," became effective. The amendment broadens the definition of

"critical infrastructure" for which unauthorized entry can be punished as a felony carrying up to five years' imprisonment at hard labor.

32.     In order to effectuate their plan to suppress protests against the Pipeline, BBP and/or HUB communicated with Defendant Sheriff Theriot about the need for law enforcement officials to be available at or near construction sites in St. Martin's Parish. BBP and/or HUB provided information about the August 1, 2018, amendment to La. R.S. § 14:61 to Sheriff Theriot and explained that felony arrests should be made to end the Bayou Bridge Pipeline protests.

33.     At some point prior to July 27, 2018, Sheriff Theriot agreed that deputies of the St. Martin's Parish Sheriff's Office would be allowed to work "details" with HUB at or near the construction site, and that after August 1, 2018, these deputies would make felony arrests under La. R.S. § 14:61 as directed by employees of BBP and/or HUB.BBP and/or HUB also contacted other law enforcement officials, including officers of the Louisiana Department of Public Safety and Corrections' Probation and Parole Department. The P&P Officer Defendants, among others, agreed to work "details" under the supervision of employees of BBP and HUB, and were given information by BBP and/or HUB regarding the 2018 amendments to La. R.S. § 14:61 and instructed that felony arrests should be made to end the Bayou Bridge Pipeline protests.

## Plaintiffs' Unlawful Arrests

34.     In August 2018, Plaintiffs Spoon, Cook-Phillips, and Moll joined activists and water protectors in the L'eau Est La Vie camp in St. Martin Parish, Louisiana. They sought to protest the construction of the Bayou Bridge Pipeline. Concerned over the impact the Bayou Bridge Pipeline could have on Louisiana's fragile ecosystem, Plaintiffs opposed the continued construction of the project.

35.    On the morning of August 9, 2018, Plaintiffs Spoon, Cook-Phillips, and Moll joined journalist Karen Savage in paddling into the public, navigable waterways of Bayou Bee in St. Martin Parish. Spoon, Cook-Phillips, and Savage rode in one canoe, while Moll accompanied them in a kayak.

36.    The group intended to paddle to the area bordering the construction site, where Spoon, Cook-Phillips, and Moll would protest the pipeline's construction. Savage exited Spoon's and Cook-Phillips's canoe for a spot on dry land from which she could view the construction site and document the protest.



37.    At around 7:40 a.m., the group encountered a construction barge accompanied by multiple fan boats carrying agents and employees of BBP and HUB Enterprises. The pilots of the fan boats attempted to blow the Plaintiffs' vessels into the banks of the bayou by pointing their boats' fans at Plaintiffs.

38.    At around 8 a.m., two additional fan boats arrived carrying Defendant P&P officers including Adams, Barbera, Black, Matherne, Pennington, and Ward.

39.     The Defendant P&P Officers were dressed in black polo shirts identifying them as Probation and Parole officers, but they wore no name tags or other visible individual identification.

40.     An agent or employee of BBP and/or HUB, pictured below in an orange shirt and identified as "Larry," pointed toward Spoon, Cook-Phillips, and Moll, instructing Defendants Adams, Barbera, Black, Matherne, Pennington, and Ward: "You need to arrest those three. They're in the right-of-way. I'm filing charges."



41.     In fact, Plaintiffs had remained in the navigable waterway without trespassing on private property and had not violated the provisions of any criminal statute. The terms of the statute under which they were ultimately charged, La. R.S. § 14:61, explicitly protect the rights of protesters. The statute also protects the rights of persons engaging in "recreational activities conducted in the open or unconfined areas around a pipeline, including but not limited to . . . boating."



\

42.     Following the directions of BBP and HUB's agent, the fan boats carrying

Defendant P&P Officers then approached Cook-Phillips and Spoon's canoe. One of the fan

boats, carrying P&P Officers Adams and Black, pulled up alongside the canoe. Without warning,

P&P Officers Adams and Black reached into the canoe and grabbed Cook-Phillips by her arms,

forcibly pulling her out of the canoe and into the fan boat. Prior to grabbing Cook-Phillips,

officers did not tell her that she was under arrest; nor did they tell her what crime she had

allegedly committed. After dragging her into their fan boat, P&P Officers Adams and Black

handcuffed Cook-Phillips.

 

43.    P&P Officers Adams and Black, along with P&P Officer Matherne, then grabbed Spoon, pulling her arms and tying them behind her while she sat in the canoe. Like Plaintiff Cook-Phillips, Plaintiff Spoon was also dragged onto the fan boat by the P&P Officers.





44.    The fan boat maneuvered to the bank, where P&P Officers Adams, Black, and

Matherne dragged Plaintiffs Cook-Phillips and Spoon onto land.



45.    An agent or employee of BBP tried to prevent Karen Savage from recording the

arrests of Cook-Phillips and Spoon by blocking her camera with his hands and body.

46.     During the arrests of Cook-Phillips and Spoon, an employee or agent of BBP grabbed Plaintiff Moll's paddle away from him. Moll then entered the water and began swimming back toward his camp site. P&P officers, including Defendants Ward, Barbera, and Pennington, followed him in a fan boat and, after Moll reached dry land, they knocked him to the ground. The officers handcuffed him and dragged him onto their fan boat. They then brought Moll back to the construction site to join Cook-Phillips and Spoon.



47.     Throughout their arrest and detention by the Defendant P&P Officers Adams, Black, Matherne, Ward, Barbera, and Pennington, Plaintiffs repeatedly asked the officers to provide them with their names, badge numbers, and the crime for which Plaintiffs were being arrested. Defendant P&P officers refused to provide them with that information.

48.     Journalist Karen Savage also asked Defendant P&P Officers Adams, Black, Matherne, Ward, Barbera, and Pennington for their identifying information but was rebuffed. Defendant Matherne told Ms. Savage that he was "not authorized to give her" his name and that she could "call Baton Rouge" for that information.

49.    Defendant Ward, when asked by Savage what the charges were for Moll as they loaded Moll into a fan boat for transfer to SMPSO custody, answered "I'm not sure what the statute is. We'll find out when we get to the landing. I don't have all the statutes with me."

50.    Savage then explained to Defendants Ward and Barbera that Plaintiffs Spoon, Cook-Phillips, and Moll "weren't on the land. . . . Just so you guys know, there's pretty really clear case law that if you're in a waterway that's navigable, even if it is man-made, you're ok." Defendant Ward responded, in reference to Moll, "He'll get his day in court."

51.    While Plaintiffs were detained at the construction site and awaiting arrival of SMPSO deputies, two agents or employees of BBP, one of whom had been earlier attempting to block Karen Savage from recording the Plaintiffs' arrests, can be heard in the following exchange:

> Speaker 1:  When the Sheriff come down today?
> Speaker 2:  I don't know.
> Speaker 1:  Well, I know for sure he's coming down [inaudible].

52.    BBP's and HUB's employees and agents were in close contact with Sheriff Theriot, his agents, and SMPSO deputies throughout the construction of the pipeline section passing through St. Martin Parish.

53.    Shortly after Plaintiffs' initial detention, Defendants Troy Dupuis and Gabe Gauthier arrived and called for a transport by additional SMPSO deputies. They conferred with the P&P Officers and agents and employees of BBP and HUB.

14



54.    SMPSO Defendants Arabie, Dupuis, Gauthier, Huval and Martin took Plaintiffs into custody and booked them for alleged violations of La. R.S. § 14:61.

55.    Defendant SMPSO Deputies Stacey Blanchard and Waversun Guidry reported to the site at issue during the time period at issue, were present for Plaintiffs' arrests, and either directly participated in or failed to prevent their unlawful arrests.

56.    The SMPSO deputies acted at the direction of the same BBP and HUB agents and employees who had ordered P&P Defendants to arrest Plaintiffs.

57.    Defendants Ward and Pennington loaded Moll into one fan boat, while Cook-Phillips and Spoon were placed in another fan boat by Defendants P&P Officers Adams and Black. Defendant SMPSO Deputy Norris Huval transported Plaintiffs from Bayou Sorrel to Bayou Benoit Landing.

58.    The two fan boats traveled for 20–30 minutes through the bayou to rendezvous with another boat crewed by SMPSO deputies. All Plaintiffs were transferred to this SMPSO boat for another 20-minute ride to a dock, where Plaintiffs were transferred to awaiting SMPSO vehicles driven by Defendant SMPSO Deputies Sharay Arabie and Chris Martin from Bayou

Benoit to the jail. Plaintiffs continued to ask what they were being charged with and where they were being brought, without answer.

59.    A Defendant SMPSO Deputy, Arabie or Martin, and P&P Officer Ward accompanied Moll in one SMPSO vehicle. Cook-Phillips and Spoon rode in a separate vehicle with a Defendant SMPSO Deputy, Arabie or Martin.

60.    While in the SMPSO cruiser, Moll could see that Defendant Ward had a piece of paper with the HUB Enterprises logo and the text of La. R.S. § 14:61, "Unauthorized entry of a critical infrastructure." Defendant Ward was typing on the SMPSO deputy's computer, writing what Moll believes to have been the probable cause affidavit for his arrest.

61.    SMPSO Defendants booked Plaintiffs into the St. Martin Parish jail, charging all three with violating La. R.S. § 14:61(B), "Unauthorized entry of a critical infrastructure," and La. R.S. § 14:108, "Resisting an officer." Plaintiff Moll had an additional charge under La. R.S. § 14:329 "Interfering with a Law Enforcement Investigation."

62.    Plaintiffs each had a bond set at $10,000. Commercial sureties secured their releases from the jail later that day.

63.    The District Attorney for the 16th Judicial District has not charged the Plaintiffs with any criminal offenses arising from these arrests.

64.    In the months following her arrest, Cook-Phillips experienced difficulty sleeping, having nightmares of her arrest. She sought counseling and therapy from her college's health services.

65.    Spoon suffered bruising and abrasions as a result of her handling by the P&P Defendants during her arrest.

**Ratification of Plaintiffs' Unlawful Arrests:**
**SMPSO's post-August 8 Pattern of Unlawful Arrests of Protesters**

66.     Following Plaintiffs' arrests, SMPSO deputies continued to participate in unlawful arrests while working security details with HUB Enterprises.

67.     Between August 10 and October 3, 2018, over a dozen more protesters of the Bayou Bridge Pipeline were arrested by SMPSO deputies working security details with HUB Enterprises.

68.     SMPSO supervisors and Sheriff Theriot approved deputies working these details retroactively. Dozens of "Outside Employment Request" forms for SMPSO deputies working details for HUB beginning on July 27, 2018, were retroactively approved by supervisors and Sheriff Theriot on October 3, 2018.

## PLAINTIFFS' CLAIMS FOR DAMAGES

### Claims Under Federal Law

### I.     False Detention, Arrest, and Imprisonment in Violation of the Fourth and Fourteenth Amendments

69.     P&P and SMPSO Defendants acting at the behest of and in conjunction with BBP and HUB, detained, arrested, and imprisoned Plaintiffs with neither reasonable suspicion nor probable cause to believe a crime had been committed.

70.     Defendants' actions were the direct and proximate cause, as well as the moving force, for the violation of Plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure.

71.     This violation of Plaintiffs' rights caused bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expenses, as set forth more fully above.

### II.     Failure to Intervene to Prevent Unlawful Arrests.

72.    P&P and SMPSO Defendants acting at the behest of and in conjunction with BBP and HUB, witnessed their fellow officers unlawfully arresting Plaintiffs in violation of their constitutional rights, yet they did nothing to prevent the arrests even though they had the opportunity and duty to do so.

73.    As a direct and proximate result of Defendants' failure to intervene, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expenses, as set forth more fully above.

**III.    Retaliatory Arrest for Violation of First Amendment Rights**

74.    Plaintiffs were engaged in protected First Amendment activity on a navigable waterway when they were arrested on August 9, 2018. P&P and SMPSO Defendants lacked probable cause for their arrests, whether for a violation of the crime alleged in the arrest affidavits or for any other crime.

75.    Defendants worked together to effect these arrests in retaliation for Plaintiffs' protected speech against the construction of the pipeline.

76.    Defendants' actions were the direct and proximate cause, as well as the moving force, for Plaintiffs bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expenses, as set forth more fully above.

**IV.    *Monell* Liability for Violations of Plaintiffs' Civil Rights**

77.    Defendant Theriot has developed and maintained policies, practices, procedures, customs, and usages exhibiting deliberate indifference to the constitutional rights of protesters, which caused the violation of Plaintiffs' rights as described herein and the resultant damages suffered.

78.    Sheriff Theriot had a policy, custom, or practice of allowing and encouraging his deputies to work private details without sufficient oversight or approval processes.

79.    In particular, Sheriff Theriot, as the final policymaker for the St. Martin's Parish Sheriff's Office, agreed with BBP and HUB to provide deputies to work "detail" shifts to suppress protests against the pipeline project in St. Martin's Parish by arresting protesters and charging them with felonies under the amendments to R.S. § 14:61, whether or not the arrests were permissible under the terms of the statute itself or the Constitutions of the United States and of Louisiana.

80.    Sheriff Theriot failed to train his deputies to recognize the First Amendment rights of protesters and demonstrators, reflecting a deliberate indifference to Plaintiffs' constitutional rights.

81.    Sheriff Theriot failed to train his deputies in the scope of La. R.S. § 14:61 and its exception for protected speech, reflecting a deliberate indifference to Plaintiffs' constitutional rights.

82.    Sheriff Theriot and his agents had the power to prevent or aid in the prevention of the wrongs done and conspired to be done as described herein, yet failed or refused to do so, in violation of 42 U.S.C. § 1983.

83.    Moreover, the actions of all SMPSO Defendants were directed, condoned, and/or ratified by Sheriff Theriot and his authorized representative, in that the Sheriff at no time terminated the approval for SMPSO deputies to work details with HUB. To the contrary, on October 3, 2018, SMPSO signed off on the approvals of all twenty-five deputies who worked with HUB Enterprises in making arrests at the BBP site.

84.     Sheriff Theriot's actions and omissions as described herein were done with knowing disregard for Plaintiffs' constitutional rights. Theriot acted maliciously, willfully, wantonly, and in reckless disregard of Plaintiffs' rights.

85.     Theriot's actions were the direct and proximate cause of the violations of Plaintiffs' First, Fourth and Fourteenth Amendment rights, bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expenses, as set forth more fully above.

## Claims Under Louisiana Law

### V.    Violations of the Free Expression Protections of the Louisiana Constitution

86.     Article I, Section 7 of the Louisiana Constitution, protects freedom of expression. Article I, Section 9 protects freedom of assembly and the right to petition the government for redress of grievances. Defendants' actions in arresting and detaining Plaintiffs as described above interfered with their exercise of these fundamental rights, as guaranteed by Louisiana's Constitution.

87.     Defendants were acting in the course and scope of their employment at all times relevant to this claim.

88.     As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

### VI.   Violations of the Right to Privacy, the Right to be Left Alone, and the Rights of the Accused Established by the Louisiana Constitution

89.     Defendants' seizure of Plaintiffs was unreasonable and without probable cause, constituting a violation of the right to be left alone and the right to privacy secured by Article I, §

5 of the Louisiana Constitution. The failure to promptly inform Plaintiffs of the charges against them also violates Article I, § 13 of the Louisiana Constitution.

90.     Defendants were acting in the course and scope of their employment at all times relevant to this claim.

91.     As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of income, loss or destruction of property, and legal expenses, as set forth more fully above.

### VII.    Intentional Torts, Including Intentional Infliction of Emotional Distress, Assault, Battery, and False Imprisonment

92.     Plaintiffs incorporate the factual allegations of the preceding paragraphs.

93.     Defendants intended to inflict a harmful or offensive contact upon Plaintiffs in the process of arresting them. As the arrests and detention were unjustified by legal authority, Defendants have committed the intentional torts of assault, battery, false arrest and imprisonment. Defendants' response to peaceful and lawful protests, and their arrest of Plaintiffs amounts to extreme and outrageous conduct that caused Plaintiffs severe emotional distress. Defendants knew or should have known that such distress would be the outcome of their actions and therefore are liable for intentional infliction of emotional distress.

94.     Defendants were acting in the course and scope of their employment at all times relevant to this claim.

95.     As a direct and proximate result of Defendants' misconduct, Plaintiffs suffered damages, including bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, and legal expenses, as set forth more fully above.

**PRAYER FOR RELIEF**

Plaintiffs pray that this Court award them the following relief:

A.  A declaratory judgment that some or all of the customs, usages and/or policies alleged in paragraphs 66–68 and 77–85 above violated Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

B.  A declaratory judgment that some or all of the customs, usages and/or policies alleged in paragraphs 66–68 and 77–85 above violated the rights of Plaintiffs under Article I, §§ 5, 7, and 9 of the Louisiana Constitution of 1974.

C.  Compensatory damages including an amount sufficient to compensate them for physical and emotional pain and suffering, lost wages, lost income, lost or damaged property caused by Defendants' actions as alleged herein.

D.  Punitive damages against each of the individual defendants in amounts sufficient to deter and punish each of them for their willful and wanton misconduct.

E.  Equitable relief in the complete destruction of any and all documents, objects, and/or records generated as a result of Plaintiffs' illegal arrests and detention.

F.  Attorneys' fees, costs, and judicial interest under 42 U.S.C. § 1988, 28 U.S.C. § 1920, and other such lawful authority; and

G.  Such further and additional relief as this Court may deem proper and just.

Respectfully submitted,

*/s/James W. Craig*
James W. Craig, La. Bar No. 33687
Emily M. Washington, La. Bar No. 34143
Eric A. Foley, La. Bar No. 34199

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)

jim.craig@macarthurjustice.org
emily.washington@macarthurjustice.org
eric.foley@macarthurjustice.org

*Attorneys for Plaintiffs*