## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

CYNTHIA SPOON, ET AL.                                    CIVIL ACTION

VERSUS                                                   19-516-SDD-EWD

BAYOU BRIDGE PIPELINE, LLC, ET AL.

## RULING

This matter is before the Court on the *Motion to Dismiss*[1] filed by Defendant, Bayou Bridge Pipeline, LLC, ("BBP"). Plaintiffs, Cynthia Spoon, Sophia Cook-Phillips, and Eric Moll ("Plaintiffs") filed an *Opposition*[2] to this motion, to which BBP filed a *Reply*.[3]  Plaintiffs also sued St. Martin Parish Sheriff Ronald Theriot, Deputy Sharay Arabie, Deputy Stacey Blanchard, Deputy Troy Dupuis, Deputy Gabe Gauthier, Deputy Waversun Guidry, Deputy Norris Huval, and Deputy Chris Martin ("SMPSO Defendants"), as well as HUB Enterprises ("HUB"), and they may be mentioned throughout this ruling; however, the motion for the Court's consideration is brought only by BBP.  For the following reasons, BBP's *Motion* shall be denied.

## I.    BACKGROUND

Plaintiffs allege that, on August 9, 2018, they were boating in a canoe and a kayak on the open waters of a bayou when they encountered a construction barge operated by representatives of BBP. Plaintiffs further allege that BBP, accompanied by

---

[1] Rec. Doc. No. 34.
[2] Rec. Doc. No. 42.
[3] Rec. Doc. No. 43.

61760                                                                              1

representatives of HUB Enterprises, Inc. ("HUB"), and Louisiana Department of Public Safety & Corrections Division of Probation and Parole ("P&P") Officers Adams, Barbera, Black, Matherne, Pennington, and Ward (hereinafter, "P&P Defendants"), in conjunction with St. Martin Parish Sheriff's Office deputies Arabie, Blanchard, Dupuis, Gauthier, Guidry, Huval, and Martin, caused the SMPSO Defendants to arrest Plaintiffs as they were peacefully protesting the construction of the Bayou Bridge Pipeline, without probable cause and in retaliation for the exercise of their First Amendment rights. Plaintiffs claim that the officers and deputies arrested Plaintiffs at the direction of the representatives of BBP and HUB.

Plaintiffs filed suit against the above-named Defendants, asserting federal violations of their First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, and asserting various Louisiana state law claims pursuant to the Louisiana Constitution and general state tort law. Plaintiffs filed a *First Amended Complaint*[4] (hereinafter, the "Complaint") wherein they assert the following claims: Claim I for "False Detention, Arrest, and Imprisonment in Violation of the Fourth and Fourteenth Amendments;"[5] Claim II for "Failure to Intervene to Prevent Unlawful Arrests;"[6] Claim III for "Retaliatory Arrest for Violation of First Amendment Rights;"[7] Claim IV for "*Monell* Liability for Violations of Plaintiffs' Civil Rights;"[8] Claim V, under Louisiana law, for "Violations of the Free Expression Protections of the Louisiana Constitution;"[9] Claim VI, under Louisiana law, for "Violations of the Right to Privacy, the Right to be Left Alone,

---

[4] Rec. Doc. No. 28.
[5] Rec. Doc. 28 p. 17.
[6] *Id.* at p. 17-18.
[7] *Id.* at p. 18.
[8] *Id.* at p. 18-20. Claim IV is not asserted against BBP and will, therefore, not be addressed in this Ruling.
[9] *Id.* at p. 20.

61760

and the Rights of the Accused Established by the Louisiana Constitution;"[10] and Claim VII, under Louisiana law, for "Intentional Torts, Including Intentional Infliction of Emotional Distress, Assault, Battery, and False Imprisonment."[11]  Plaintiffs' *Complaint* alleges three claims for civil rights violations under 42 U.S.C. § 1983 and three vicarious liability claims under Louisiana State Law against Defendants for their arrests.[12]

BBP moves to dismiss Plaintiffs' *Complaint*, arguing generally that the *Complaint* is ambiguous, conclusory, and missing necessary factual allegations to state a claim.[13] BBP also contends Plaintiffs fail to differentiate between the Defendants or specify how each individual Defendants' conduct applies to each claim for the Court to make a reasonable inference that BBP is specifically liable for the alleged misconduct.[14] BBP claims all of Plaintiffs' claims are "based on acts and omissions which Bayou Bridge is not alleged to have engaged in."[15] Further, BBP argues that it "can only act through its employees," and the *Complaint* lacks specific identification of BBP employees.[16] Regarding the vicarious liability claims, BBP contends the *Complaint* contains no factual allegations that a BBP employee was acting within the course and scope of employment as required by Louisiana law,[17] and since Plaintiffs have not identified employees or employers, their assigned duties, or locations and times of their actions, these claims are also subject to dismissal.[18]

---

[10] *Id.* at p. 20-21.
[11] *Id.* at p. 21.
[12] *Id.*
[13] Rec. Doc. 34-1 p. 2, 13.
[14] *Id.* at p. 1.
[15] *Id.* at p. 8.
[16] *Id.* at p. 9.
[17] *Id.* at p. 10.
[18] *Id.* at p. 12.

Plaintiffs oppose BBP's motion and argue their *Complaint* does, indeed, specify the conduct of BBP.[19]  Plaintiffs contend BBP acted in conjunction with the other named Defendants such that there are sufficient factual allegations that "plausibly state[] claims against BBP for false arrest, and excessive force under § 1983 and for the supplemental claims under the Louisiana Constitution and state law."[20]  As to the false arrest and imprisonment claims, Plaintiffs argue that they have alleged a close nexus between all the Defendants' actions and Plaintiffs' arrests, thus satisfying the requirements of § 1983.[21]  As to the state law claims, Plaintiffs maintain those same allegations provide support therefor.[22]

Plaintiffs also argue that the law regarding vicarious liability requires the balancing of four factors, and not all four must be alleged to impose liability.[23] As for the course and scope of employment, Plaintiffs contend that there are no facts to support "any personal, non-employment" motives for the conduct of BBP's employees; rather, all facts alleged demonstrate that the employee actions were within the scope of employment, and the goal of the conduct was directly related to the construction of the pipeline.[24]

Plaintiffs state that "paragraphs 25-68 are captioned 'Facts Relevant to All Claims'"; thus, identification of individual Defendants as to each claim is unnecessary.[25] Plaintiffs further argue that the collective use of "Defendants" is not prohibited by Rule 8, and Plaintiffs are not required to specify each individual Defendant's role in the underlying

---

[19] Rec. Doc. 42 p.1.
[20] *Id.* at p. 2.
[21] *Id.* at p. 3.
[22] *Id.* at p. 10.
[23] *Id.* at p. 11.
[24] *Id.* at p. 17.
[25] *Id.*

incident, which can be determined in the discovery process.[26]

## II.    LAW AND ANALYSIS

### A.  Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[27] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[28] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[29]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[30] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[31]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32] In order to satisfy the plausibility

---

[26] *Id.* at p. 12, n. 7.

[27] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[28] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[29] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[30] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").

[32] *Twombly*, 550 U.S. at 570.

61760

standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[33] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[34]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[35]

### B.  Private Entity Liability under Section 1983

 BBP first takes issue with Plaintiffs' collective use of "Defendants" in the pleadings, arguing that this lack of specificity "makes it impossible for Bayou Bridge or the Court to determine which claims are being made against it."[36]  BBP also claims, with respect to the federal and state law claims, that Plaintiffs do not allege that BBP took part in these activities and fail to specify what employees of BBP allegedly acted.  Plaintiffs counter that, in this type of case where it is alleged that a private entity acted in concert with state officials to violate their constitutional rights, pleading in this manner is appropriate as it attributes the allegations to the conduct of all Defendants, including BBP.  To resolve this matter, the Court turns to the law regarding private entity liability under Section 1983.

To maintain a claim that a private citizen is liable under Section 1983 on the basis of joint action with state officials, [plaintiff] "must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." It is well settled that private

---

[33] *Iqbal*, 556 U.S. at 678.
[34] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[35] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[36] Rec. Doc. No. 34-1, p. 4.

61760                                                                                                  6

parties do not become state actors merely by calling upon law enforcement for assistance. Likewise, private citizens who give information to law enforcement do not become state actors under Section 1983 when the information is used to effect an arrest, even if the citizen knew that the information was false.[37]

Under the nexus test, a private party will be considered a state actor "where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise,'" and the actions of the private party can be treated as that of the state itself.[38]   Plaintiffs contend their allegations regarding the actions of BBP and state officials meet this standard for pleading purposes. Plaintiffs submit the following allegations in the *Complaint* in support of their position that, if proven, BBP would be liable under the nexus test:

a. **BBP with its contractor HUB entered into a "preconceived plan" with the law enforcement Defendants to make felony arrests of pipeline protesters**.

• At the time of Plaintiffs' arrests, BBP was attempting construction of a crude oil pipeline crossing 163 miles from the Texas-Louisiana border to St. James Parish, Louisiana, a stretch referred to as the Bayou Bridge Pipeline. FAC ¶ 25.

• The Pipeline was confronted with vehement opposition from environmental activists. FAC ¶ 28.

---

[37] *Cook v. City of Shreveport*, No. 10–0809, 2011 WL 3665000, at *4 (W.D.La. Aug.19, 2011) (Hicks, J.) (quoting *Polacek v. Kemper County*, 739 F.Supp.2d 948, 952 (S.D.Miss.2010)) (citing *Guillot v. Coastal Commerce Bank*, No. 10–2092, 2010 WL 4812959, at *3 (E.D.La. Nov.19, 2010) (Zainey, J.) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir.1988))) (emphasis added); *accord Polacek*, 739 F.Supp.2d at 952–54 (citing *How v. City of Baxter Springs*, 217 F. App'x 787, 793 (10th Cir.2007); *Lockhead v. Weinstein*, 24 F. App'x 805, 806 (9th Cir.2001); *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir.1989); *Krisher v. Krisher*, No. 3:09–CV–83–TS, 2009 WL 3568664, at *6 (N.D.Ind. Oct.26, 2009); *Givens v. Main St. Bank*, No. 5:08CV25, 2009 WL 1120599, at *8 (N.D.W.Va. Apr. 24, 2009); *Johns v. Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 404 (S.D.N.Y.2004); *Kahermanes v. Marchese*, 361 F.Supp. 168, 171 (E.D.Pa.1973)); *see also Spencer*, 864 F.2d at 1381 ("[P]olice assistance in the lawful exercise of self-help does not create a conspiracy with the private person exercising that self-help."))).

[38] *Bass*, 180 F.3d at 242; *see also Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982).

61760                                                                                                         7

• BBP contracted with Defendant HUB Enterprises to provide security during the construction of the pipeline. FAC ¶¶ 7, 8.

• Protests of the Bayou Bridge Pipeline had taken place before August 2018. In those protests, persons were arrested, charged with misdemeanors, and released. FAC ¶30.

• On August 1, 2018, an amendment of La. R.S. § 14:61 became effective, broadening the definition of "critical infrastructure" for which unauthorized entry can be punished as a felony carrying up to five years' imprisonment at hard labor. FAC ¶ 31.

• To silence the growing dissent about construction of the Bayou Bridge Pipeline, BBP and HUB contracted with law enforcement officials to make felony arrests of protesters of the Pipeline. FAC ¶ 29.

• To effectuate their plan to suppress protests against the Pipeline, BBP and/or HUB communicated with Defendant Sheriff Theriot about the need for law enforcement officials to be available at or near construction sites in St. Martin's Parish. FAC ¶32.

• BBP and/or HUB provided information about the August 1, 2019 amendment to La. R.S. § 14:61 to Sheriff Theriot and explained that felony arrests should be made to end the Bayou Bridge Pipeline protests. FAC ¶ 32.

• At some point prior to July 27, 2018, Sheriff Theriot agreed that deputies of the St. Martin's Parish Sheriff's Office would be allowed to work "details" with HUB at or near the construction site, and that after August 1, 2018, these deputies would make felony arrests under La. R.S. § 14:61 as directed by employees of BBP and/or HUB. FAC ¶33.

• BBP and/or HUB also contacted other law enforcement officials, including officers of the Louisiana Department of Public Safety and Corrections' Probation and Parole Department. FAC ¶33.

• The P&P Officer Defendants, among others, agreed to work "details" under the supervision of employees of BBP and HUB, and were given information by BBP and/or HUB regarding the 2018 amendments to La. R.S. § 14:61 and instructed that felony arrests should be made to end the Bayou Bridge Pipeline protests. FAC ¶ 33.

### b. BBP's employees were directly involved in the detention of the Plaintiffs.

• BBP's and HUB's employees and agents were in close contact with Sheriff Theriot, his agents, and SMPSO deputies throughout the construction of the pipeline section passing through St. Martin Parish. FAC ¶ 52.

• Employees and agents of BBP, together with employees and agents of HUB Enterprises, directed Defendants Adams, Barbera, Black, Matherne, Pennington, and Ward to arrest Plaintiffs. FAC ¶¶ 7-8.

• Plaintiffs paddled in a canoe and kayak in the public, navigable waterways of Bayou Bee in St. Martin's Parish on August 8, 2018. They intended to travel to the area bordering the construction site, where they planned to protest the pipeline's construction. FAC ¶¶ 35-36.

 • At around 7:40 a.m., the group encountered a construction barge accompanied by multiple fan boats carrying agents and employees of BBP and HUB Enterprises. The pilots of the fan boats attempted to blow the Plaintiffs' vessels into the banks of the bayou by pointing their boats' fans at Plaintiffs. FAC ¶37.

• At around 8 a.m., two additional fan boats arrived carrying Defendant P&P officers including Adams, Barbera, Black, Matherne, Pennington, and Ward. FAC ¶38.

• An agent or employee of BBP and/or HUB, shown in the picture below FAC ¶40 and identified as "Larry," pointed toward Plaintiffs Spoon, Cook-Phillips, and Moll, instructing Defendants Adams, Barbera, Black, Matherne, Pennington, and Ward: "You need to arrest those three. They're in the right-of-way. I'm filing charges." FAC ¶40.6

• Following the directions of BBP and HUB's agent, P&P Defendants Adams and Black grabbed Plaintiff Cook-Phillips, dragged her to their fan boat, and handcuffed her, without telling her that she was under arrest or what crime she had allegedly committed. FAC ¶ 42.

• P&P Defendants Adams, Black, and Matherne then grabbed Plaintiff Spoon, tying her arms behind her and dragging her onto the fan boat. FAC ¶43.

• As Defendants Adams, Black, and Matherne brought Phillips Cook-Phillips and Spoon to the bank, an agent or employee of BBP blocked the camera of Plaintiffs' companion, Karen Savage, in an attempt to prevent her from recording the arrests. FAC ¶¶ 44-45.

• During that same time, an employee or agent of BBP grabbed Plaintiff Moll's paddle away from him. When Moll entered the water and began swimming back toward his camp site, P&P Defendants followed him to the bank, knocked him to the ground, and dragged him into their fan boat. FAC ¶46.

• While Plaintiffs were detained at the construction site, two agents and employees of BBP, including the one who attempted to block the recording of the arrests, had a conversation about when Sheriff Theriot would "come down" to the site. FAC ¶ 51.

• Shortly after Plaintiffs' initial detention, SMPSO Defendants Dupuis and Gauthier arrived and conferred with the P&P Defendants and agents and employees of BBP and HUB. FAC ¶ 53.

**c. The law enforcement Defendants did not exercise independent judgment concerning the selection of the statutes under which Plaintiffs would be charged, but were directed by BBP and HUB to use La. R.S. § 14:61.**

• None of the law enforcement defendants were willing to inform the Plaintiffs or Ms. Savage of the charges under which the Plaintiffs were arrested. FAC ¶¶ 47-49.

• In particular, Defendant Ward, who was asked by Ms. Savage about the charges against Plaintiff Moll, stated "I'm not sure what the statute is. We'll find out when we get to the landing. I don't have all the statutes with me." FAC ¶ 49.

• While in the SMPSO cruiser, Moll could see that Defendant Ward had a piece of paper with the HUB Enterprises logo and the text of La. R.S. § 14:61, "Unauthorized entry of a critical infrastructure." Defendant Ward was typing on the SMPSO deputy's computer, writing what Moll believes to have been the probable cause affidavit for his arrest. FAC ¶ 60.

• SMPSO Defendants Arabie, Dupuis, Gauthier, Huval and Martin took Plaintiffs into custody and booked them for alleged violations of La. R.S. § 14:61. The SMPSO deputies acted at the direction of the same BBP and HUB agents and employees who had ordered P&P Defendants to arrest Plaintiffs. FAC ¶¶ 54, 56.

• SMPSO Defendants booked Plaintiffs into the St. Martin Parish jail, charging all three with violating La. R.S. § 14:61(B), "Unauthorized entry of a critical infrastructure," and La. R.S. § 14:108, "Resisting an officer."

Plaintiff Moll had an additional charge under La. R.S. § 14:329 "Interfering with a Law Enforcement Investigation." FAC ¶61.[39]

Plaintiffs maintain these allegations specifically demonstrate how BBP, HUB, and the state officials involved had a preconceived plan to make felony arrests of protestors as directed by BBP and HUB. The Court must accept these allegations as true at the Rule 12(b)(6) stage. Further, contrary to BBP's argument, the Court clearly understands Plaintiffs allegations and how the roles allegedly played by each Defendant was a collective action. Any claim that BBP cannot glean from these allegations what it is being accused of is simply meritless.

Further, BBP cites the decision by the Western District of Texas court in *Lasslett v. Tetra Tech*[40] wherein the court acknowledged that, in several cases, a plaintiff's collective use of the term "Defendants" has been found insufficient to establish a claim because "[f]ailing to differentiate between defendants can sometimes be grounds for dismissal of a complaint."[41] However, the *Lasslett* court also noted that "'[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'"[42] As Plaintiffs

---

[39] Rec. Doc. No. 42, pp. 6-9.

[40] No. DR-13-CV-072-AM-CW, 2015 WL 13805125 (W.D. Tex. Feb. 20, 2015), *report and recommendation adopted*, 2015 WL 13805181 (W.D. Tex. Sept. 30, 2015).

[41] *Id.* at *4 (citing e.g., *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."); *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (granting a motion to dismiss for failure to provide fair notice under Rule 8 in part because "[t]he complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants' and failed to identify any factual basis for the legal claims made"); *Medina v. Bauer*, No. 02 Civ. 8837(DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong.").

[42] *Id.* (quoting *Hudak v. Berkley Grp., Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014); *see also Ritchie v. N. Leasing Sys. Inc.*, No. 12-CV-4992(KMK), 2014 WL 1303440 (S.D.N.Y. Mar. 31, 2014) (denying a motion to dismiss despite collective allegations); *United States ex rel. Howard v. Urban Inv. Trust, Inc.*, No. 03 C 7668, 2010 WL 148643, at *4 (N.D. Ill. Jan. 14, 2010); *Howard*

point out, Paragraphs 25 through 68 of the *Complaint* are captioned "Facts Relevant to All Claims"; thus, considering the nexus test governing this matter, BBP is fully on notice of the claims asserted against it.

This Court acknowledges that, in most cases, it has generally agreed with BBP's contention that lumping together several Defendants is not proper pleading. However, as set forth in *Lasslett*, it depends on the context of the complaint in determining if "lumping together" is an "unacceptable vague form of pleading."[43] The court further states that some details "can await discovery."[44] Considering the nature of the claims and the standard to be applied in this matter, the Court finds that the allegations in the *Complaint* do not violate Rule 8, and BBP's *Motion to Dismiss* the Section 1983 claims is DENIED.

### C. Vicarious Liability for State Law Claims

The Louisiana Supreme Court has held as follows regarding the application of vicarious liability to an employee's tortious conduct:

> The law in this area is clear that an employer is liable for a tort committed by his employee if, at the time, the employee was acting within the course and scope of his employment. The course of employment test refers to time and place. The scope of employment test examines the employment-related risk of injury.
>
> ... In fact, this Court has held that in order for an employer to be vicariously liable for the tortious acts of its employee the tortious conduct of the employee must be so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest.
>
> An employer is not vicariously liable merely because his employee commits

---

*v. Mun. Credit Union*, No. 05 Civ. 7488(LAK), 2008 WL 782760, at *12 (S.D.N.Y. March 25, 2008) ("While Rule 8 does not prohibit 'collective allegations' against multiple defendants, it does require that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do.") (internal citations and alterations omitted)).

[43] *Id.* at *2.

[44] *Id.*

an intentional tort on the business premises during working hours. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective.[45]

In determining whether to hold an employer vicariously liable, courts are to consider four factors:

(1) whether the tortious act was primarily employment rooted;
(2) whether the violence was reasonably incidental to the performance of the employee's duties;
(3) whether the act occurred on the employer's premises; and
(4) whether it occurred during the hours of employment.[46]

BBP argues that Claims V, VI, and VII - state law tort claims asserted against all Defendants under a theory of vicarious liability - state in conclusory fashion that "Defendants were acting in the course and scope and their employment at all times relevant to this claim" [47] but fail to identify any specific employees of BBP. Since Plaintiffs fail to state which alleged employees are at issue, the alleged employees' job titles or descriptions, or the alleged employer for these claims, BBP argues that: "Plaintiffs' bald, conclusory assertions that unidentified employees of unnamed entities 'were acting in the course and scope of their employment at all times' are wholly insufficient to assert claims against Bayou Bridge for vicarious liability."[48]  BBP further states that no BBP employees are named as Defendants, and a reference to "Larry" as an employee of BBP is likewise insufficient as he is alleged to be an employee of BBP "and/or HUB," which BBP argues fails to specifically identify BBP as his employer.  Thus, the mere assertions that BBP

---

[45] *Id.* at 996 (internal citations and quotations omitted).
[46] *Id.* at 996–997, (citing *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974); *see also Johnson*, 37 So.2d at 547 ("Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.")).
[47] Rec. Doc. No. 28, pp. 20-21.
[48] Rec. Doc. No. 34-1, p. 11.

employees were acting in the course and scope of their employment while committing the allegedly tortious conduct are legal conclusions that fail to meet Plaintiffs' pleading burdens.

BBP relies heavily on this Court's decision in *Crawford v. Wal–Mart Stores, Inc.*,[49] wherein the Court granted the defendant's Rule 12(b)(6) motion as to the vicarious liability claim arising from an employee striking a customer. The Court reasoned that dismissal was appropriate because "the allegations do not indicate that the battery was, in any way, employment-rooted or incidental to the Wal–Mart employee's duties."[50] The Court continued:

> Put another way, Crawford's vicarious liability claim does not have facial plausibility because the facts alleged do not allow the Court to draw a reasonable inference that Wal–Mart is liable for the misconduct alleged. Since there is no allegation that the employee's action was incidental to or motivated in any way by his employment duties with Wal–Mart, the court cannot conclude that Wal–Mart should be held vicariously responsible for such conduct.[51]

Plaintiffs oppose BBP's motion and counter that the same allegations set forth above in detail satisfy their pleading burden for the vicarious liability claims. Plaintiff contend the above-cited paragraphs allege the participation of BBP employees in the tortious conduct, including the arrangement made with the state officials to arrest protestors; the specific directions given by BBP and/or HUB employees Plaintiffs witnessed on August 8, 2018; and further directions by these employees providing the state officials with the law under which Plaintiffs should be charged. Plaintiffs note that, when a private person or entity directs the making of a false arrest, that person is liable

---

[49] No. 10–805, 2011 WL 3206196 (M.D.La. July 27, 2011).
[50] *Id.* at *2.
[51] *Id.* at *2, n. 4.

61760

14

under Louisiana tort law.[52]  Here, Plaintiffs maintain they have sufficiently alleged facts based on the alleged conduct of BBP employees that would give rise to liability.

The Court finds that Plaintiffs' vicarious liability claims are not subject to dismissal. First, BBP fails to cite authority for the proposition that all employees must be named or identified in asserting a vicarious liability claim against a company.  As mentioned in *Lasslett*, the plaintiffs relied on the non-binding decisions in *Hudak v. the Berkley Group, Inc.*, wherein the court held that, "[p]rior to discovery, plaintiff need not explain the details of each defendant's role....";[53]  and *United States ex rel. Howard v. Urban Inv. Trust, Inc.*, wherein the court held that, "[a]t the complaint stage, plaintiffs are not expected to know or allege the complete details of each defendant's precise role in the complex transactions that supposedly took place. It is sufficient to state that the group of named defendants was responsible for the alleged misconduct specified in the complaint. The discovery process is used to determine the exact particulars of each transaction.".[54]  The Court finds that Plaintiffs will be more readily able to identify the employees of BBP and/or HUB that are the actors alleged in their *Complaint* following discovery.  Plaintiffs have no way of obtaining this information without discovery, and BBP is clearly on notice of the allegations arising out of the incident and what employees may, or may not, have been involved on the date of the incident.

Further, while BBP complains that Plaintiffs' allegations do not specify how their purported employees' conduct was in the course and scope of their employment, Plaintiffs are correct that BBP relies on cases involving facts where the employees' conduct was

---

[52] Rec. Doc. No. 42, p. 10 (citing *Douzat v. Dolgencorp*, LLC, No. 2015-1096 (La. App. 3rd Cir. 4/16/16), 215 So. 3d 833; *Johnson v. Montoya*, No. 2013-1951 (La. App. 1st Cir. 5/2/14), 145 So. 3d 418).
[53] 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014).
[54] 2010 WL 148643, at *4 (N.D. Ill. Jan. 14, 2010).

61760

15

based on personal motives unrelated to their employment.[55]  In no way do the allegations set forth above suggest that the conduct of any employees was based on personal motivations unrelated to their employment; rather, the allegations specify that conduct directly related to their employment – the construction of the pipeline and providing security therefor.  The purported BBP employees are alleged to have been on the barge assisting the officers with seizing the Plaintiffs and directing them how to charge Plaintiffs.  Further, Plaintiffs have incorporated into the body of the *Complaint* several photographs of the incident, and BBP is in a better position to identify its employees, if captured, than Plaintiffs.  The Court finds the allegations are clear enough for the Court to draw the inference that this alleged conduct is attributable to BBP's employment interests.  Accordingly, BBP's motion shall be denied as to Claims V, VI, and VII.

## III.    CONCLUSION

For the foregoing reasons, the *Motion to Dismiss*[56] filed by Defendant, Bayou Bridge Pipeline, LLC is hereby DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on September 29, 2020.

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[55] Plaintiffs effectively distinguish these cases from the facts alleged in this matter.  *See* Rec. Doc. No. 42, pp. 13-17.
[56] Rec. Doc. No. 34.
61760