UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**CYNTHIA SPOON, et al.**                                                              **CIVIL ACTION**

**VERSUS**                                                                                    **NO. 19-516-SDD-SDJ**

**BAYOU BRIDGE
PIPELINE, LLC, et al.**

## ORDER

Before the Court is a Motion to Compel (R. Doc. 116) filed by Plaintiffs on September 30, 2022. Defendant Bayou Bridge Pipeline filed an Opposition (R. Doc. 121). At issue are 14 emails and documents withheld by BBP under the attorney-client privilege. Because there were so few documents at issue, and based on the parties' respective arguments, the Court ordered BBP to submit all 14 emails and documents for in-camera review. (R. Doc. 127). The Court has now reviewed the withheld emails and documents (R. Doc. 128), along with the parties' filings (R. Docs. 116, 121), and finds that Plaintiffs' Motion to Compel (R. Doc. 116) must be partially granted.

And at the outset, the Court will address certain language used by BBP in its Opposition. In opposing the Motion to Compel, BBP takes multiple opportunities to disparage its opponents' counsel, referring to Plaintiffs' counsel as "petty and misleading," and describing their legal arguments as the "hallmarks of desperation." (R. Doc. 121 at 2, 17). This is in no way appropriate, and language like this should not be used in this Court again.

## I.  BACKGROUND[1]

In July of 2021, Plaintiffs served BBP with their first set of Interrogatories and Requests for Production. (R. Doc. 116-3). Relevant here, Request for Production No. 8 sought:

> **Request for Production No. 8:**
> All communications, including emails and text messages, regarding Cynthia Spoon, Sophia Cook-Phillips, and Eric Moll or their arrests.

(R. Doc. 116-3 at 7). BBP provided documents and written responses in December of 2021. In response to Request for Production No. 8, BBP stated:

> **Response to Request for Production No. 8:**
> Subject to Bayou Bridge Pipeline's incorporated objections and reservation of rights, Bayou Bridge Pipeline objects that this request is overly broad, oppressive, and unduly burdensome because it is unlimited as to time and scope, is not limited to the issues in this matter, incident in question, or La. R.S. § 14:61, is therefore an unwarranted annoyance, and is not reasonably calculated to lead to the discovery of admissible evidence. Bayou Bridge Pipeline further objects to this request as seeking materials subject to attorney work product protection, the attorney-client privilege, and other protections and privileges. Subject to and without waiving these objections, see the documents produced in conjunction herewith.

(R. Doc. 116-5 at 15-16). Discovery as to BBP then closed on January 31, 2022. (R. Doc. 71). According to BBP, it later discovered a group of documents that it failed to produce as part of its December 2021 discovery responses. Although, it does not say exactly when BBP discovered these documents. BBP then provided revised discovery responses to Plaintiff in late August of 2022 and also submitted a Privilege Log identifying 30 documents being withheld as privileged. (R. Docs. 116-15 to 116-17). However, BBP did not indicate the discovery requests to which the documents were responsive.

Plaintiffs challenged both the adequacy of the Privilege Log and the privileged nature of the documents identified in Log Entry Nos. 1-14, all of which were being withheld under the

---

[1] The facts of this litigation have been discussed in numerous opinions by this Court and are therefore not repeated here. *See Spoon v. Bayou Bridge Pipeline, LLC*, 335 F.R.D. 468, 469 (M.D. La. 2020); *Spoon v. Bayou Bridge Pipeline, LLC*, 2020 WL 5803453, at *1 (M.D. La. Sept. 29, 2020).

attorney-client privilege. (R. Doc. 116-22). At Plaintiffs' request, BBP informed them that the documents were responsive to Request for Production No. 8, which again sought "All communications, including emails and text messages, regarding Cynthia Spoon, Sophia Cook-Phillips, and Eric Moll or their arrests." (R. Doc. 116-16 at 15). BBP also submitted a revised Privilege Log containing the number of pages for each of the 14 documents; however, they refused Plaintiffs' request to provide bates numbers for each document. (R. Doc. 116-21). Aside from page numbers, BBP did not otherwise revise its Privilege Log. When the parties were unable to resolve these discovery issues on their own, Plaintiffs filed the instant Motion to Compel (R. Doc. 116).

## II.    DISCUSSION

After reviewing the parties' briefs, the Court ordered BBP to submit the first 14 documents identified on its Privilege Log, which are at issue here, for in-camera review. (R. Doc. 127). The Court has now reviewed the 14 withheld documents (R. Doc. 128), along with the parties' briefs (R. Docs. 116 and 121). As explained below, the Court finds that BBP failed to provide an adequate Privilege Log, and that the emails and documents identified in Log Entry Nos. 2, 3, 9, 11, 12, 13 and 14 are not protected from disclosure by the attorney-client privilege. However, the emails identified in Log Entry Nos. 1, 4, 5, 6, 7, 8 and 10 are subject to the attorney-client privilege, although BBP acknowledges that it has voluntarily waived privilege for the email identified in Log Entry No. 1.[2]

---

[2] According to BBP, the email identified in Log Entry No. 1 was eventually disclosed to a third-party when it was sent as an attachment to the email identified in Log Entry No. 9. (R. Doc. 121 at 9); (R. Doc. 116-24). According to BBP, Log Entry No. 9 was also protected by the attorney-client privilege. However, BBP suggests that because it "forwarded" the email identified in Log Entry No. 9 to an unidentified third-party (R. Doc. 121 at 9), it therefore waived privilege and produced Log Entry No. 9, including its attachment (the email identified in Log Entry No. 1) to Plaintiffs.

The Court, however, has reviewed the email identified in Log Entry No. 9. (R. Doc. 116-24). And as explained below, the Court finds that email was never protected by the attorney-client privilege. (R. Doc. 116-24). In other words, there was no privilege for BBP to waive with respect to Log Entry No. 9. Its attachment (the email identified in Log Entry

### A.     Adequacy of BBP's Privilege Log

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires a party withholding information as privileged to: "(i) expressly make the claim" of privilege; and "(ii) describe the nature" of the withheld information in a way that "will enable other parties to assess the claim." In addition, Local Rule 26(c) further requires the withholding party to "submit a privilege log" that adequately names and describes each withheld document. *See* LR 26(c) (document's description "must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege"). Generally, a privilege log "should . . . describe the document's subject matter, purpose for its production, and [give] [a] specific explanation of why the document is privileged or immune from discovery." *Estate of Manship v. U.S.*, 236 F.R.D. 291, 296 n.4 (M.D. La.), *partially vacated on other grounds by* 237 F.R.D. 141 (M.D. La. 2006).

"The standard for testing the adequacy of a privilege log is whether each entry sets forth facts sufficient to establish each element of the claimed privilege." *United States v. Louisiana*, 2015 WL 4619561, at *2 (M.D. La. July 31, 2015). "The focus is on the specific descriptive portion of the log . . . since the burden of the [withholding] party . . . cannot be discharged by mere conclusory assertions." *Chemtech Royalty Assocs., L.P. v. U.S.*, 2009 WL 854358, at *3 (M.D. La. March 30, 2009). "Where a party fails to . . . submit[] an []adequate privilege log, the claim of privilege may be denied." *Manship*, 236 F.R.D. at 296 n.4.

---

No. 1), however, was protected by the attorney-client privilege. (R. Doc. 116-23). But that privilege was waived when Log Entry No. 1 was forwarded to a third-party as an attachment to Log Entry No. 9. Neither party suggests that BBP's voluntary waiver of privilege for the email identified in Log Entry No. 1 also waived the attorney-client privilege for any other protected communications.

Here, BBP invokes the attorney-client privilege as its basis for withholding the first 14 documents listed on its privilege log. The attorney-client privilege[3] "protects only confidential communications made to a lawyer or [their] subordinate for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 316 (N.D. Tex. 2009). With that in mind, the Court now turns to the Privilege Log provided by BBP and whether it provides sufficient information to establish that each document is protected from discovery by the attorney client privilege.

For each entry, BBP provides the date, sender, recipient, and subject line or name of the email or document. *See* LR 26(c). The last column of the log contains a "description" of each document. The same "description" is provided for each withheld email (Log Entry Nos. 1-10): "Attorney-client communication regarding legal matters." (R. Doc. 116-21 at 1). Likewise, the "description" of each document attached to an email (Log Entry Nos. 11-14) is the same: "Attachment to attorney-client communication, providing information to attorney for potential use in litigation." (R. Doc. 116-21 at 1). This is not enough.

"[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to . . . establish[] attorney-client privilege." *Raymond v. Unum Grp.*, 2022 WL 10208218, at *3 (M.D. La. Oct. 17, 2022); *see also United States v. Chen*, 99 F.3d 1495, 1502 (9th

---

[3] Rule 501 of the Federal Rules of Evidence makes clear "that federal privilege law applies in federal question cases involving only federal law and that state privilege law applies in diversity cases involving only state law." *Porter v. Dauthier*, 2014 WL 6674468, at *2 (M.D. La. Nov. 25, 2014); *see also Gilbreath v. Guadalupe Hosp. Foundation, Inc.*, 5 F.3d 785, 791 (5th Cir.1993) (applying federal privilege law in federal question case); *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299 n. 26 (5th Cir.2005) (applying state privilege law in diversity case). However, when supplemental state-law claims are also present in federal question cases, as they are in this litigation, "it is not immediately clear what [privilege] law should apply" — federal or state. *Garza v. Scott & White Memorial Hospital*, 234 F.R.D. 617, 625 (W.D. Tex. 2005); *Jaffee v. Redmond*, 518 U.S. 1, 15 n.15 (1996) (declining to decide "the proper rule in cases . . . in which both the federal and state claims are asserted in federal court," leaving the issue for lower courts to resolve). But here, we need not dwell over which privilege law to apply — state or federal — because the "federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege." *Forever Green Athletic Fields, Inc. v. Babcock Law Firm, LLC*, 2014 WL 29451, at *6 (M.D. La. Jan. 3, 2014).

Cir. 1996) ("Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it is the conclusion."); *United States v. El Paso Co*., 682 F.2d 530, 539 (5th Cir. 1982) ("the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents."); *Garcia v. Cnty. of Stanislaus*, 2022 WL 4237960, at *5 (E.D. Cal. Sept. 13, 2022) ("Merely the elements or definitions of a privilege does not constitute a sufficient description."); *Morgan Hill Concerned Parents Ass'n v. Cal. Dep't of Educ. (Morgan Hill)*, 2017 WL 445722, at *9 (E.D. Cal. Feb. 2, 2017) (privilege log describing withheld document as "communication made in confidence for the purpose of giving or obtaining legal advice" was inadequate for court to "assess the claim" of privilege because it merely repeated the definitions of attorney client materials).

But BBP argues that it did do "more" than just describe "a lawyer's advice as 'legal,'" *Raymond*, 2022 WL 10208218, at *3, focusing on its Privilege Log's inclusion of the "subject line" of each email (R. Doc. 121 at 10).[4] This is significant, according to BBP, because the "Cambridge Dictionary defines 'subject line' as the 'space at the top of an email in which a line of text is written that **tells you what the email is about**." (R. Doc. 121 at 10).

But BBP's argument is flawed. It blindly assumes the author of every email chose a 'subject line' that complies the Cambridge Dictionary's definition of that term. This is nonsensical. What's more, the actual subject lines of the emails at issue reveal little to nothing about each emails' subject matter.

For example, the emails identified in Log Entry Nos. 1 – 8 include the same subject line — "SO arrests this morning" and the same description — "Attorney-client communication regarding legal matters." (R. Doc. 121 at 10). Even when read together, this in no way captures

---

[4] BBP additionally points out that its Privilege Log includes the date, sender and recipient of each email and document. (R. Doc. 121 at 9-11).

the individual subject matter of each email, which run the gambit of asking in-house counsel to begin the process of securing a temporary restraining order, clarifying typographical errors, and in-house counsel's legal advice regarding the designation of a witness. And the additional information provided — date, sender, recipient, page numbers — adds little to nothing.

Put simply, the information provided on the Privilege Log for each withheld email or document is woefully deficient to establish the elements of the attorney-client privilege. *See Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 651 (E.D. Cal. 2010) ("[T]he information provided by plaintiff in the 'Description and/or Subject (for correspondence)' column of the privilege logs provides . . . very little information that would permit the court or defendant to assess . . . the attorney-client privilege . . . . Plaintiff appears to have just copied the **subject line** from the e-mail or letter withheld. . . . This is patently deficient.").

Finally, BBP argues that the descriptions in its "Privilege Log are immaterial" as Plaintiffs have the emails identified in Log Entry Nos. 1 and 9 in their possession. (R. Doc. 121 at 9); (R. Doc. 116-23); (R. Doc. 116-24). Log Entry No. 1 is the first email in the "'SO arrests this morning' email chain" and Log Entry No. 9 is the first email in the "'ARB – Opposition Activities on Thursday August 9 2018' email chain." (R. Doc. 121 at 8); (R. Doc. 116-23) (Log Entry No. 1); (R. Doc. 116-24) (Log Entry No. 9). According to BBP, Log Entry No. 9 was forwarded to a third-party with Log Entry No. 1 included as an attachment. Both emails therefore lost their privilege and were produced to Plaintiffs. (R. Doc. 121 at 9). Based on the privileged contents of these 2 emails, BBP suggests that every subsequent email on its Privilege Log must also be privileged. The Court disagrees.

At the outset, if the emails identified in Log Entry Nos. 1 and 9 were no longer privileged at the time of production, they should not be listed on BBP's Privilege Log.[5] Beyond that, knowing the contents of the initial email in a chain of emails is not enough to establish that each subsequent email also contains a communication protected by the attorney client privilege. *See Chemtech Royalty Assocs., L.P. by Dow Eur., S.A. v. United States*, 2010 WL 11538363, at *3 (M.D. La. Sept. 23, 2010) ("For example, asserting privilege for an entire e-mail thread in the privilege log, but only describing the last message in the thread is deficient.").

Despite BBP's insistence to the contrary, its Privilege Log falls short of what is required under Rule 26(b)(5) and Local Rule 26(c).

### B.  Attorney-Client Privilege

While BBP's Privilege Log does not provide enough information for the Court or Plaintiffs test the adequacy of their privilege assertions, the Court has reviewed each withheld document in-camera. *See S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 316 (N.D. Tex. 2009) ("In view of this stunning lack of evidence, the court ordered Microtune to produce a sampling of the challenged documents for in camera review."). BBP claims that all 14 entries on its Privilege Log—10 emails and 4 attached documents—are protected from disclosure by the attorney client privilege, which shields "only confidential communications made to a lawyer or [their] subordinate for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *S.E.C. v. Microtune, Inc.*, 258 F.R.D. 310, 316 (N.D. Tex. 2009).

**Privilege Log Entry No. 1** is an email between BBP employee, Russell Sweeney, and in-house counsel, Keegan Pieper. In that email, Sweeney is relaying information (Plaintiffs' names and addresses) for Pieper to use in obtaining a temporary restraining order that was later filed in

---

[5] As previously mentioned, neither party suggests that the voluntary production of either of these emails also waived privilege as to any other emails at issue.

state court against Plaintiffs.[6] Although he is relaying factual information, the communication is a request for legal services and is therefore protected by the attorney-client privilege.[7] *See Apex Mun. Fund v. N-Grp. Sec.*, 841 F. Supp. 1423, 1428 (S.D. Tex. 1993) ("the situation is like that where a client gives general information to his lawyer so that the lawyer may prepare a complaint in any ordinary civil action. The fact that some of the information is thus disclosed" in the civil action "does not waive the privilege.").

**Privilege Log Entry Nos. 2 and 3** are emails sent in response to Mr. Sweeney's initial email. Privilege Log Entry No. 2 is an email from Keegan Pieper to Mr. Sweeney, in which Mr. Pieper confirms receipt of Mr. Sweeney's requests, indicating that he will "get working on [the TRO]," but largely asks for confirmation on a typographical error — "Please confirm that Cynthia Spoon is 'Denton, TX,' not Denton T4?" In the following email, Log Entry No. 3, Mr. Sweeney simply states: "Correct, TX."

While the initial email (Log Entry No. 1) in this thread may have been privileged, these 2 on-going communications are not; they are simply Mr. Pieper getting clarification on a typo. "[M]erely because a legal issue can be identified that relates to on-going communications does not justify shielding them from discovery." *Chemtech Royalty Assocs., L.P. by Dow Eur., S.A. v. United States*, 2010 WL 11538363, at *7 (M.D. La. Sept. 23, 2010); *see also AHF Cmty. Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 146 (N.D. Tex. 2009) ("The mere existence of an attorney-client privilege relationship or the mere exchange of information with an attorney does not give rise to a presumptive claim of privilege."); *In re Royce Homes, LP*, 449 B.R. 709, 723 (S.D. Tex.

---

[6] Plaintiffs understandably argue that this email is not privileged as it does not explicitly request any legal advice or assistance from in-house counsel, Keegan Pieper. (R. Doc. 116-1 at 13). While this is true, when read in conjunction with Mr. Pieper's response (Log Entry No. 2), it is clear that Mr. Pieper understood Mr. Sweeney's email as a request to begin the process of securing a TRO against Plaintiffs.

[7] But once again, BBP acknowledges that it waived privilege over Log Entry No. 1 by forwarding the email to a third-party.

2011) ("Not all communications between a client and his or her attorney are protected by the attorney-client privilege."); *Tonti Mgmt. Co. v. Soggy Doggie, LLC*, 2020 WL 9172077, at *3 (E.D. La. June 25, 2020) ("While the attorney-client privilege extends to all situations in which counsel is sought on a legal matter, it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.").

**Privilege Log Entry Nos. 4, 5, 6, 7, and 8** are the remaining emails in the "SO arrests this morning" chain. The email identified in Log Entry No. 4 was sent by Mr. Pieper, in-house counsel, to Mr. Sweeney. It contains Mr. Pieper's advice on additional information that might be useful in securing the TRO against Plaintiffs, including a witness who can provide an affidavit. In the remaining emails (Log Entry Nos. 5-8) Pieper and Sweeney exchange confidential information, including Pieper's legal advice, regarding a potential witness for the TRO. Sweeney also provides additional information that Pieper has requested in connection with the TRO. These communications are clearly privileged. *See AHF Cmty. Dev., LLC v. City of Dallas*, 258 F.R.D. 143, 146 (N.D. Tex. 2009) ("It shields communications from the lawyer to the client only to the extent that these are based on, or may disclose, confidential information provided by the client or contain advice or opinions of the attorney.").

**Privilege Log Entry No. 9** was forwarded to a third-party and therefore has been disclosed to Plaintiffs in discovery. While BBP contends that the email was obviously privileged prior to its disclosure to a third-party, the Court disagrees. The email at issue was sent by Cary Farber to Russell Sweeney, Rodney Winch and Nathan Hunt. BBP's in-house counsel, Keegan Pieper, is also copied. First, there is no information regarding the sender Cary Farber's role within BBP[8]

---

[8] BBP's Privilege Log does not provide the job title or explain the role of any person identified as a sender or recipient of the withheld communications and documents. Indeed, the Court is unaware of not only Cary Farber's role, but also the roles of Rodney Winch and Nathan Hunt. For the email identified in Log Entry No. 9, the sender, Cary Farber,

and, unlike the email identified in Log Entry No. 1, Mr. Farber does not reference the TRO or any other legal proceeding. Mr. Farber is likewise not seeking legal advice. It appears to the Court that BBP may consider this email to be privileged simply because Mr. Pieper, its in-house counsel, is copied as a recipient. (R. Doc. 121 at 7). But this is not enough to establish that the communication is protected by the attorney-client privilege. *See Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017) ("There is no presumption that a company's communications with counsel are privileged."); *Slocum v. Int'l Paper Co.*, 549 F. Supp. 3d 519, 525 (E.D. La. 2021) ("[N]o particular legal issue is identified in the exchange . . . . The exchange is consistent with the general practice of copying legal counsel on all communications which may, at some time, be of legal significance.").

**Privilege Log Entry No. 10** consists of 3 emails sent in reply to Mr. Farber's email (Log Entry No. 9). In these emails, Mr. Pieper is requesting additional information from BBP employees that he believes would be useful in securing the TRO against Plaintiffs. Because these emails consist of communications about what the attorney believes is relevant to the TRO, they are protected from disclosure by the attorney-client privilege.

**Privilege Log Entry Nos. 11, 12, 13 and 14** are documents attached to one of the emails from Kevin Taliaferro to in-house counsel, Keegan Pieper, identified in Log Entry No. 10. These documents include one satellite photo of the area where Plaintiffs were arrested (Log Entry No. 11) and 3 plats of that area, each identified as LA-SM-6074 (Log Entry Nos. 12, 13, 14).

---

may be an attorney or a non-lawyer employee. The Privilege Log provides no insight. And this is a serious flaw. Without this information it is difficult to know whether the communication falls "within the sphere of privilege." *United States v. Louisiana*, 2014 WL 4619561, at *4 (M.D. La. July 31, 2015) ("While the attorney client privilege can extend to communications between an organization's employees and its in-house counsel, the role of each person involved in that communication is crucial to determining applicability of the privilege.").

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance," *Fisher v. United States*, 425 U.S. 391, 403 (1976); however, it "attaches not to the information but to the communication of the information," *United States v. Cunningham*, 672 F.2d 1064, 1073 n.8 (2d Cir. 1982). Therefore, pre-existing documents "given by the client to his attorney in the course of seeking legal advice do not thereby become privileged." *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1165 (2d Cir. 1992); *see also United State v. City of Hesperia*, 2021 WL 5034381, at *6 (C.D. Cal. June 17, 2021) ("Similarly, attachments to privileged emails are not themselves privileged simply by association. Defendants must produce those attachments unless they claim they are privileged in their own right.").

By contrast, the emails transmitting these documents, in which an employee of BBP communicates with in-house counsel and both share their thoughts about the propriety of information relevant to securing a TRO, is covered by the attorney-client privilege. But the documents themselves do not then become cloaked in any sort of privilege by way of association. Indeed, the 3 plats are a matter of public record, and at least one is already in Plaintiffs' possession — the plat identified in Log Entry No. 13 is also attached to Plaintiffs' Expert's Report (R. Doc. 73-3 at 25).

Absolutely nothing in the Privilege Log, BBP's Opposition, or even the email to which these documents are attached, indicates that these pre-existing documents have somehow become protected by the attorney-client privilege. *United States v. Louisiana*, 2015 WL 4619561, at *6 (M.D. La. July 31, 2015) (document attached to email sent by client to attorney was not subject to attorney client privilege where nothing indicated that document was prepared in order to obtain legal advice or services); *Pfizer Inc. v. Ranbaxy Laboratories Ltd.*, 2004 WL 2323135, at *1–2 (D.

Del. Oct. 7, 2004) ("Factual information, technical data, the results of studies, investigations and testing . . . and other factual information is discoverable" and not protect by the attorney-client privilege); *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 109 (S.D.N.Y. 2000) ( "Given the purely factual nature of the documents in question," which consisted of compilations of data, there can be no "good faith basis" for the assertions of attorney-client privilege.).

    **C.**    **Waiver**

The Court has just found that Log Entry Nos. 1, 4, 5, 6, 7, 8 and 10 are protected from disclosure by the attorney-client privilege. Next, the Court must determine whether a waiver of that privilege has occurred. At the outset, the Court again notes that BBP voluntarily waived any privilege over the email identified in Log Entry No. 1. And so, the Court must only determine whether a waiver has occurred with respect to Log Entry Nos. 4 – 8 and 10.

Plaintiffs ask the Court to find that BBP has waived the attorney-client privilege over all the documents at issue because it's Privilege Log is inadequate and was not submitted until months after the close of discovery. The Court has already found that BBP submitted a Privilege Log that does not comply with either Rule 26(b)(5) or Local Rule 26(c). And unfortunately, that Privilege Log was also untimely.

BBP provided its initial discovery responses in December of 2021, before discovery as to BBP closed on January 31, 2022. (R. Doc. 71). Roughly 7 months after the close of discovery, BBP made a supplemental production between August 24 and September 6, 2022, that included the Privilege Log at issue here. To excuse its delay, BBP explains:

> Unbeknownst to undersigned counsel, a set of documents was inadvertently segregated by a third-party vendor from the rest of the documents collected in response to the Plaintiffs' discovery requests. Undersigned counsel was unaware of these segregated documents when Bayou Bridge provided its December 3, 2021

      discovery responses. After undersigned counsel became aware of the documents' existence, undersigned counsel evaluated them, prepared the unprotected documents for production, prepared a privilege log describing the privileged documents, and produced the Privilege Log and unprotected documents.

(R. Doc. 121 at 3).

    This explanation leaves much to be desired. It omits exactly when BBP learned of these "segregated" documents and it suggests BBP's counsel may have over-relied on a third-party vendor to comply with their own obligations in discovery. However, even considering this along with the Privilege Log's inadequacy, the Court is not prepared to impose waiver of the attorney-client privilege as a sanction.

    "A party's failure to properly or timely object does not result in an automatic waiver." *Felham Enters. (Cayman) Ltd. v. Certain Underwriters at Lloyd's*, 2004 WL 2360159, at *2 (E.D. La. Oct. 19, 2004). "Waiver is a harsh sanction that a court should impose only in cases of unjustified delay, inexcusable conduct, bad faith or other flagrant violations and after considering the circumstances surrounding the objections." *Janvey v. Alguire*, 2018 WL 11362638, at *6 (N.D. Tex. Oct. 17, 2018).

    It must be pointed out to BBP that it would be within this Court's discretion to find a waiver of the attorney-client privilege given the inadequacy of its Privilege Log and its untimely production of that Privilege Log. However, the record demonstrates that BBP did timely provide its initial discovery responses. And a finding of waiver would, in this Court's view, necessarily imply that BBP is not being truthful about the circumstances surrounding its recent discovery of the documents now listed on its untimely Privilege Log. That is something the Court will not do under the circumstances. And so, the Court finds that BBP has not waived the attorney-client privilege for the emails identified in Log Entry Nos. 4, 5, 6, 7, 8 and 10.

## III.   CONCLUSION

For the reasons given above, Plaintiffs' Motion to Compel is **partially GRANTED** to the extent it seeks **production** of the emails and documents identified in **Log Entry Nos. 1, 2, 3, 9, 11, 12, 13, and 14**, which are not protected from disclosure by the attorney-client privilege. BBP must **produce** the emails and documents identified in **Log Entry Nos. 1, 2, 3, 9, 11, 12, 13, and 14** to Plaintiffs within **10 days** of this Order. Plaintiffs' Motion to Compel is **otherwise DENIED** as to the emails identified in **Log Entry Nos. 4, 5, 6, 7, 8, and 10**.

Signed in Baton Rouge, Louisiana, on December 14, 2022.

*Scott Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**