## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CYNTHIA SPOON, SOPHIA COOK-PHILLIPS, AND ERIC MOLL<br>*Plaintiffs*,<br>vs.<br><br>BAYOU BRIDGE PIPELINE LLC, HUB ENTERPRISES, INC., P&P OFFICER HERMAN MATHERNE, P&P OFFICER MARK WARD, P&P OFFICER JON BARBERA, P&P OFFICER HEATHER M. PENNINGTON, P&P OFFICER DOUGLAS BLACK, P&P OFFICER ANGELA ADAMS, SHERIFF RONALD THERIOT, DEPUTY SHARAY ARABIE, DEPUTY STACEY BLANCHARD, DEPUTY TROY DUPUIS, DEPUTY GABE GAUTHIER, DEPUTY WAVERSUN GUIDRY, DEPUTY NORRIS HUVAL, AND DEPUTY CHRIS MARTIN,<br>*Defendants*. | CIVIL ACTION<br><br>NO. 19-516-SDD-SDJ<br><br>JUDGE SHELLY D. DICK<br><br>MAGISTRATE SCOTT D. JOHNSON |

### BAYOU BRIDGE PIPELINE LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND REPORT OF EXPERT WITNESS JAMES "PAT" ENGLADE

Plaintiffs incorrectly depict Former Baton Rouge Police Chief James "Pat" Englade's opinions as making legal conclusions, when in reality his opinions are admissible factual analyses by a law enforcement professional experienced in evaluating facts related to police conduct. Indeed, Former Chief Englade does not offer ultimate legal conclusions such as the existence of probable cause, as Plaintiffs suggest, and instead conducts analyses of the facts available to the arresting officers, and of facts related to the use of force under the circumstances. Plaintiffs fail to address or account for the legal distinction between the type of admissible factual opinion offered by Former Chief Englade, and the type of inadmissible legal conclusion courts reject. As a result of this failure, Plaintiffs combine inapplicable authority with their incorrect depiction of Former Chief Englade's opinions to attack opinions Former Chief Englade does not offer.

1

Plaintiffs further argue, without providing specifics, that Former Chief Englade makes credibility and fact dispute determinations, but he does not do so and only relies on undisputed facts and specific, appropriate references to individual witness testimony and documentation.

Former Chief Englade's opinions on the use of off-duty law enforcement in security details are similarly admissible to educate the jury about the practice of using off-duty law enforcement for security, to rebut Plaintiffs' narrative that contracting use of off-duty law enforcement is inappropriate, and to provide background and context in which to assess Plaintiffs' allegations that off-duty law enforcement was contracted in this case for illegal and improper purposes.

Former Chief Englade's actual opinions—not the incorrect depiction subjected to attack by Plaintiffs—satisfy the requirements of the Federal Rules of Evidence, and will provide helpful perspective and information to the jury.  Plaintiffs' motion should therefore be denied.

## I.    BACKGROUND

Plaintiffs filed this lawsuit asserting claims premised on the allegation that their August 9, 2018 arrests by off-duty Probation & Parole officers, working a security detail for construction of the Bayou Bridge Pipeline, were without probable cause and based on a conspiracy amongst the Defendants, including the off-duty officers, to illegally arrest them for protesting the pipeline's construction.[1] The lawsuit includes counts for: (I) False Detention, Arrest, and Imprisonment in Violation of the Fourth and Fourteenth Amendments; (II) Failure to Intervene to Prevent Unlawful Arrests; (III) Retaliatory Arrest, Violating First Amendment Rights; (IV) *Monell* Liability of the Sheriff for Violating Plaintiffs' Civil Rights; (V) Violating the Louisiana Constitution's Free Expression Protections; (VI) Violating the Louisiana Constitution's Right to Privacy, Right to be Left Alone, and Rights of the Accused; and (VII) Intentional Torts, including Intentional Infliction

---

[1] Doc. 28 (Amended Complaint).

2

of Emotional Distress, Assault, Battery, and False Imprisonment.[2]

To help it address these claims, Bayou Bridge has designated Former Baton Rouge Police Chief James "Pat" Englade as an expert to use his more than thirty years as a law enforcement officer, detective, supervisor, and administrator to provide opinions in response to the following questions:

1. Did facts exist within the Probation & Parole officers' knowledge sufficient for them to believe the Plaintiffs had committed the crime of intentionally or negligently obstructing a navigable waterway?

2. Did facts exist within the Probation & Parole officers' knowledge sufficient for them to believe Eric Moll had committed the crime of resisting an officer?

3. Did facts exist within the Probation & Parole officers' knowledge sufficient for them to believe they needed to intervene and stop the Plaintiffs' arrests?

4. Evaluate the reasonableness of the force used upon the Plaintiffs under the circumstances surrounding their arrests.

5. Describe the role of off-duty law enforcement in security details, whether it is different to have off-duty law enforcement participate in a security detail than to have a security guard participate, and whether it was helpful to have off-duty law enforcement working security details in this situation. If P.O.S.T. certification and security detail post orders figure into this analysis, please discuss these topics as part of your evaluation.

Former Chief Englade's opinions are included in his October 21, 2022 Expert Report, which also includes his personal background and attaches his resume, list of materials received from undersigned counsel, and materials considered.[3]  Plaintiffs do not challenge Former Chief Englade's qualifications or experience, which include conducting police misconduct and internal affairs investigations, assisting in writing the Baton Rouge Police Department use of force rules and regulations, and creating the Baton Rouge Police Department "extra duty" office to track, maintain, and approve off-duty security assignments.[4]

---

[2] Doc. 28 at pp. 17 – 21 (Amended Complaint).
[3] Former Chief Englade's full October 21, 2022 Expert Report, including attachments A and B, is attached as Ex. A.
[4] Doc. 135-2, pp. 2-3 (Oct. 21, 2022 Expert Report of James "Pat" Englade").

## II.    LEGAL STANDARD

"[R]ejection of expert testimony is the exception rather than the rule." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019), quoting Fed. R. Evid. 702 advisory committee's notes (2000).  "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system . . . ." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).

## III.    AUTHORITY AND ANALYSIS

### A.    Plaintiffs Present No Basis to Exclude Former Chief Englade's Opinion About Facts Within the Probation & Parole Officers' Knowledge Regarding the Plaintiffs Obstructing a Navigable Waterway

#### i.    This Opinion About Facts Within the Officers' Knowledge does not Offer a Legal Conclusion on Probable Cause

Former Chief Englade's opinion that facts existed within the Probation & Parole Officers' knowledge sufficient for them to believe the Plaintiffs had committed the crime of intentionally or negligently obstructing a navigable waterway is a factual opinion allowed by the Federal Rules of Evidence, and is distinct from offering a legal conclusion about the existence of probable cause. Despite the fact that Former Chief Englade does not offer an opinion that probable cause did or did not exist, Plaintiffs suggest that he does offer such an opinion and they then present case law in support of that suggestion.[5]  Because Former Chief Englade's opinion is a proper and allowable factual opinion, Plaintiffs' arguments and authority about offering opinions on the existence of probable cause are inapposite and do not provide grounds for exclusion of this opinion.

The Fifth Circuit has described in detail the distinction between opinions that constitute admissible factual conclusions and opinions that constitute inadmissible legal conclusions. Federal Rule of Evidence 704 provides "[a]n opinion is not objectionable just because it embraces an ultimate issue." Rule 704 expressly abolished the old, per se rule against testimony regarding

---

[5] Plaintiffs even admit that Former Chief Englade's inquiry is factual, even though they subsequently devote the entirety of their argument to the admissibility of an opinion on the existence of probable cause—an opinion Former Chief Englade does not offer.  Memo in Support of Motion to Exclude Englade, pp. 6-8.

4

ultimate issues *of fact*, allowing opinions on ultimate issues of fact as opposed to inadmissible opinions offering legal conclusions. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 239-40 (5th Cir. 1983). Plaintiffs fail to address or consider this distinction, instead relying on "the old view that the giving an opinion on an ultimate issue would 'usurp the function' or 'invade the province' of the jury.'" *Id.* at 240. The problem with this view is that it is not the law, since it was "unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information." *Id.* The old view "is aptly characterized as empty rhetoric," as "the mere fact that an expert's conclusion trenches upon a jury issue does not compel its exclusion." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977).

The Fifth Circuit's ruling in *Owen v. Kerr-McGee Corp.* adeptly describes the difference between an admissible factual conclusion and an inadmissible legal conclusion, relying on the advisory committee notes to Rule 704. 698 F.2d 236 at 240, citing Fed. R. Evid. 704 advisory committee's notes. The question "Did T have capacity to make a will?" should be excluded, as it seeks a legal conclusion that would provide the jury with no information other than what the expert believes the verdict should be. *Id.* To the contrary, the question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is a permissible question seeking a factual conclusion. *Id.* "Stated differently, questions (1) and (2) capture the distinction between an impermissible opinion on an ultimate legal issue and a mere explanation of the witness's analysis of facts which would tend to support a jury finding on the ultimate issue." *United States v. Keys*, 747 F. App'x 198, 208 (5th Cir. 2018).

The distinction demonstrating the admissibility of this opinion is seen in *United States v. Keys*, where the Fifth Circuit found it would have been inappropriate to seek a legal conclusion by

asking "do you believe that the defendant committed the offense of sex trafficking of a child," but it found no error in allowing the expert to render opinions in response to questions about whether a victim had been compelled to engage in commercial sex acts through force, fraud, or coercion, in a specific geographical area, during a specific time frame. *Id.* at 208.  The distinction showing the difference between Former Chief Englade's admissible factual opinion and an inadmissible legal conclusion is also demonstrated by *Hayter v. City of Mount Vernon*, 154 F.3d 269, 274 (5th Cir. 1998), in which the Fifth Circuit found no error in allowing "the expert's conclusion that no reasonable officer could believe that he or she had probable cause for an arrest for possession of marijuana based on the appearance and odor of the Inda-Kind." *Hayter v. City of Mount Vernon*, 154 F.3d 269, 274 (5th Cir. 1998).  Rather than opining on the existence or non-existence of probable cause, this conclusion, like Former Chief Englade's, applied facts to reach a conclusion related to probable cause.

"[A]n expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Olivier v. Exxon Mobil Corp.*, 596 F. Supp. 3d 606, at *8 (M.D. La. April 1, 2022).  Former Chief Englade satisfies this admissibility standard by opining on facts that can be used to support a conclusion of probable cause, but not the question of whether or not probable cause existed.  This distinction is not only applicable to this opinion, but to all for which Plaintiffs accuse Former Chief Englade of authoring legal conclusions.

Plaintiffs suggest Former Chief Englade answers the question "did the Probation & Parole officers have probable cause to arrest the Plaintiffs," but in reality Former Chief Englade answers the factual and acceptable question "did facts exist within the Probation & Parole officers' knowledge sufficient for them to believe the Plaintiffs had committed the crime of intentionally or

6

negligently obstructing a navigable waterway."[6]  This is much like the difference between the two examples addressed by *Owen* and the advisory committee notes to Rule 704, the two examples in *Keys*, and is within the realm of acceptability demonstrated by *Hayter*.  The admissible question addresses facts to be evaluated as part of the jury's determination, while the inadmissible question addresses the jury's determination to be set forth on the verdict form.  Former Chief Englade's opinion is a proper "explanation of the witness's analysis of facts which would tend to support a jury finding on the ultimate issue." *Keys*, 747 F. App'x at 208.

### ii.  This Opinion is Not Analogous to Those Cited by Plaintiffs

Plaintiffs incorrectly depict this opinion as addressing the existence of probable cause, and present cases to attack the incorrectly depicted opinion.  The cases each address expert opinions on the existence of probable cause, an opinion which Former Chief Englade does not offer, rendering the cases and Plaintiffs' arguments irrelevant and unsuccessful.

### a.  *Day v. Baton Rouge City Police*

Plaintiffs rely most heavily on *Day v. Baton Rouge City Police*, 2020 U.S. Dist. LEXIS 223670, at *14 (M.D. La. Nov. 30, 2020), for their argument that "[t]his Court has excluded" testimony "on whether the P&P Defendants had probable cause to arrest Plaintiffs."[7] The expert in *Day* opined officers had probable cause to arrest the plaintiff based on what the Court held was his "merely accept[ing] one of two contested factual versions in this case." *Id.* at *10-13.

*Day* is inapplicable because Former Chief Englade does not do either of these things. Rather, Former Chief Englade, an expert with extensive experience evaluating thousands of complaints against officers, looked at the facts within the Probation & Parole officers' knowledge.[8]

---

[6] Doc. 135-2, p. 3 (Englade Expert Report).
[7] Memo in Support of Motion to Exclude Englade, p. 6.
[8] Doc. 135-2, pp. 3-6 (Englade Expert Report).

#100876836v1

This is an important factual component of probable cause, which is an issue in this case, but not a legal conclusion on the existence of probable cause.

> The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest. The facts must be particularized to the arrestee. We apply an objective standard, which means that we will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense.

*Club Retro LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). The analysis involves the "facts and circumstances available to" the officer at the time of the arrest. *Petersen v. Johnson*, 2023 U.S. App. LEXIS 144, at *13 (5th Cir. Jan. 4, 2023). This is exactly what Former Chief Englade looks at in this case, and what he is experienced at doing.[9] Furthermore, he does not accept one of two contested factual versions of the facts, as demonstrated below, but looks at facts that were undisputedly within the officers' knowledge—something that necessarily involves focusing on their testimony and evidence of the facts and circumstances available to them at the time of the Plaintiffs' arrests.

### b. *Porter v. Lear*

Plaintiffs rely on *Porter v. Lear*, 751 F. App'x 422, 433 (5th Cir. 2018), as support for their argument that "the Fifth Circuit has affirmed the exclusion of expert testimony" issuing a finding of probable cause.[10] Plaintiffs' argument and citation to *Porter* do not affect the admissibility of Former Chief Englade's opinion, which does make a finding of probable cause. Rather, Plaintiffs' argument and citation to *Porter* are irrelevant, because Plaintiffs fail to account for the distinction

---

[9] *Id.*
[10] Memo in Support of Motion to Exclude Englade, p. 6.

between an expert's legal conclusion on probable cause and Former Chief Englade's factual analysis which may be used by Bayou Bridge to support a jury finding of probable cause.

### c.  *Cameron v. City of New York*

Plaintiffs similarly appear to cite *Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010), as support for their argument that expert opinions offering a finding of probable cause are inadmissible.[11]  As with Plaintiffs' other citations addressing expert findings of probable cause— a finding Former Chief Englade does not make—this Second Circuit case is irrelevant to and should not affect the admissibility of Former Chief Englade's opinion.

### iii.  Making Fact Dispute Determinations Does Not Affect an Opinion's Admissibility, and Plaintiffs Point to No Credibility or Fact Dispute Determinations by Former Chief Englade

Plaintiffs argue "Englade makes his own credibility decisions and resolves factual disputes," but point to no specific instances of such determinations related to this opinion.  The dearth of any specific support for this argument is alone sufficient for the Court to dismiss this argument.  *See Jones v. Blue Cross Blue Shield*, 2018 U.S. Dist. LEXIS 13545, at *15 (M.D. La. Jan. 29, 2018) ("Blue Cross has pointed the Court to no specific 'legal conclusion' that it argues Bernhardt makes. The Court, therefore, denies this portion of the motion . . . .").

### a.  Fact Dispute Determinations Do Not Affect an Opinion's Admissibility

Even if Former Chief Englade made fact dispute determinations (which he does not), the facts upon which an expert relies do not affect an opinion's admissibility.  "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, **presentation of contrary evidence**, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"  *14.38*

---

[11] Memo in Support of Motion to Exclude Englade, p. 6.

*Acres of Land*, 80 F.3d at 1078 (emphasis added), quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).  When executing its gatekeeper function as set forth under *Daubert,* "the district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting opinions . . . .  **[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.**'" *14.38 Acres of Land,* 80 F.3d at 1077 (emphasis added), quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir. 1987).  Alleged erroneous assumptions, factual inconsistencies, and similar criticisms of the support for an expert's opinions are examples of issues that are appropriate for the jury's consideration, rather than exclusion.  *Jones*, 2018 U.S. Dist. LEXIS 13545, at *12 (M.D. La. Jan. 29, 2018).  Where a party claims there are "conflicting sets of facts," "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs.*, 290 F. App'x 727, 733 (5th Cir. 2008).

If Plaintiffs believe they have grounds to criticize Former Chief Englade's factual bases, the Supreme Court and Fifth Circuit dictate that Plaintiffs can present contrary evidence and attempt to prove their point through cross-examination.  This is true regardless of whether the Plaintiffs have "factual . . . disagreements" with Former Chief Englade, or believe his factual conclusions are inadequate or improper.  *Rogers v. Hierholzer*, 2018 U.S. Dist. LEXIS 218108, at *18 (W.D. Tex. Dec. 28, 2018); *Jones v. Am. Capital Assurance Corp.*, 2015 U.S. Dist. LEXIS 199474, at *13 (E.D. La. Apr. 24, 2015); *Diamond Offshore Co. v. Survival Sys. Int'l*, 2013 U.S. Dist. LEXIS 11538, at *22 (S.D. Tex. Jan. 29, 2013).  "When facts are in dispute, the fact-finder is entitled to hear an expert's testimony and decide what weight, if any, to accord it, which includes a consideration of whether the facts on which the expert relied are accurate." *Cooper/T. Smith*

*Stevedoring Co. v. Bright Navigation*, 2019 U.S. Dist. LEXIS 240876, at *19 (E.D. La. Jan. 25, 2019).    Plaintiffs are "free to attack the facts supporting" Former Chief Englade's opinions at trial.  *Kinney v. IBM*, 2022 U.S. Dist. LEXIS 120500, at *14 (W.D. Tex. July 8, 2022).  "The *Daubert* analysis should not supplant trial on the merits*." Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Plaintiffs' apparent, though unspecified, disagreement with the facts relied upon by Former Chief Englade is no basis for exclusion of this opinion.[12]

### b. Former Chief Englade does not Make Credibility or Fact Dispute Determinations

Former Chief Englade does not make credibility decisions or resolve factual disputes, instead relying on undisputed facts.  Although the reliance on undisputed facts is helpful in showing Former Chief Englade does not make fact dispute determinations, it is not essential for the facts to be undisputed because he is looking at the facts available to the Probation & Parole officers making the arrests, necessarily meaning their observations and testimony are more likely to be the bases for that information.  The facts addressed by Former Chief Englade related to this opinion include:

- Plaintiffs positioned themselves in a canoe and a kayak in front of a construction barge which was moving from a larger waterway into a smaller waterway, and intentionally blocked the barge from moving into the smaller waterway.[13]

- Mark Ward specifically testified the basis for the charge against the Plaintiffs was their blocking the barge from moving forward.[14]

- The Plaintiffs had been advised to get out of the way.[15]

- Plaintiffs testified that they could not hear the Probation & Parole officers, but Eric

---

[12] *Day*, 2020 U.S. Dist. LEXIS 223670, at *14, cited by Plaintiffs, recognizes this, holding "the issues with the facts upon which [the expert] relies to reach his conclusions might be properly addressed through cross-examination."
[13] Doc. 135-2, p. 5 (Englade Expert Report); Doc. 132-20, pp. 7-8 at 91:24-92:18 (Officer Ward Depo); Doc. 132-18, pp. 6-9 at 96:18-97:14; 98:14-99:2 (Officer Adams Depo); Doc. 132-24, pp. 2-7 at 83:20-88:1 (Officer Matherne Depo).
[14] Doc. 135-2, p. 5 (Englade Expert Report); Doc. 132-20, pp. 7-8 at 91:24-92:18 (Officer Ward Depo).
[15] Doc. 135-2, p. 5 (Englade Expert Report); Doc. 132-20, Exhibit 5 to Ward Depo, pp. 1, 3 (Mark Ward Affidavit and Unusual Occurrence Report for Arrest of Eric Moll); Doc. 132-18, p. 9 at 99:3-15 (Officer Adams Depo).

Moll could tell from the officers' body language that they wanted him to move out of the way, and Cynthia Spoon stated in her deposition that she was sure she was told to move out of the way.[16]

- Probation & Parole officer Matherne witnessed 1 kayak and 1 canoe (in which the Plaintiffs were located) blocking a barge, and that the Plaintiffs continued to block the barge.[17]

- The Plaintiffs did not move out of the way of the barge and continued to block its path into the smaller waterway.[18]

- The Probation & Parole officers present witnessed the Plaintiffs' actions in intentionally blocking the barge.[19]

- Eric Moll testified he was attempting to block the barge's movement through the canal.[20]

- Cynthia Spoon did not recall trying to get out of the way of the barge.[21]

- Sophia Cook-Phillips was of the opinion that even though the barge was coming down the waterway in which she was located, she did not have to move for any reason.[22]

The testimony above, as indicated by the statements themselves or the citations thereto, is either undisputed or is a specific reference to what a specific person saw or said. Furthermore, as stated above, because he is addressing facts available to the Probation & Parole officers, it makes sense that he looks at facts they testified to and wrote they were aware of. Nowhere in Former Chief Englade's report does he resolve a fact dispute or make a credibility determination related to this

---

[16] Doc. 135-2, p. 4 (Englade Expert Report); Transcript of Dec. 20, 2021 Deposition of Eric Moll, pp. 94:4-16, 202:7-203:17, attached as Ex. B; Transcript of Dec. 13, 2021 Deposition of Cynthia Spoon, pp. 92:13-24, 239:18-25, attached as Ex. C; Transcript of Dec. 15, 2021 Deposition of Sophia Cook-Phillips, pp. 193:14-21, attached as Ex. D.

[17] Doc. 135-2, p. 6 (Englade Expert Report); Transcript of Dec. 9, 2021 Deposition of Herman Matherne, Jr., pp. 113:15-114:13, Exhibit 19 to Matherne Deposition, attached as Ex. E.

[18] Doc. 135-2, p. 4 (Englade Expert Report); Transcript of Dec. 9, 2021 Deposition of Herman Matherne, Jr., pp. 113:15-114:13, Exhibit 19 to Matherne Deposition, attached as Ex. E; Doc. 132-21, pp. 6-7 at 179:22-180:2 (Spoon Depo); Doc. 132-22, pp. 3, 6-7 at 170:6-13, 191:19-192:2, 192:22-24 (Cook-Phillips Depo).

[19] Doc. 135-2, p. 6 (Englade Expert Report); Doc. 132-20, Exhibit 5 to Ward Depo, pp. 3 (Mark Ward Affidavit and Unusual Occurrence Report for Arrest of Eric Moll); Doc. 132-20, pp. 7-8 at 91:24-92:18 (Officer Ward Depo); Doc. 132-19, pp. 5-7 at 97:10-99:18 (Officer Black Depo); Transcript of Dec. 9, 2021 Deposition of Herman Matherne, Jr., pp. 113:15-114:13, Exhibit 19 to Matherne Deposition, attached as Ex. E; Doc. 132-18, pp. 3-4, 6-9 at 67:5-68:2, 96:18-97:14; 98:14-99:2 (Officer Adams Depo).

[20] Doc. 135-2, p. 4 (Englade Expert Report); Doc. 132-23, pp. 5-6 at 200:14-201:22 (Moll Depo).

[21] Doc. 135-2, p. 4 (Englade Expert Report). Doc. 132-21, p. 19 at 260:8-18 (Spoon Depo);

[22] Doc. 135-2, p. 4 (Englade Expert Report); Doc. 132-22, p. 8 at 201:5-23 (Cook-Phillips Depo).

opinion.  Former Chief Englade does state that even if the Plaintiffs could not hear the Probation & Parole officers giving commands for the Plaintiffs to move out of the way, it is common sense not to sit in a kayak or canoe in the path of a large barge.[23]  But this is an opinion, not the resolution of a fact dispute, and the fact that Plaintiffs knew to get out of the way is confirmed by Moll and Spoon's own testimony.[24]

Former Chief Englade relies on undisputed facts, and testimony and evidence about what the Probation & Parole officers were aware of.  He does not accept a single version of the facts, and notably does not rely on facts where the parties contradict each other.  If he did, the Plaintiffs could attempt to show this to the jury.  Because he does not, this is a non-issue.

### iv.  This Opinion Will be Helpful to the Jury

This opinion will be helpful to the jury, because it provides a trained, diversely experienced perspective to the analysis of the facts available to the arresting officers and the perspective and context under which those facts are viewed.  The advisory committee notes to Rule 704 provide "[t]he basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact." *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 263-64 (5th Cir. 1980) quoting Fed. R. Evid. 704 advisory committee's notes.  This means the opinion "should bring to the jury more than the lawyers can offer in argument." *Marable v. Franklin Cty.*, 1995 U.S. App. LEXIS 42894, at *14 (5th Cir. July 3, 1995) (unpublished).

Counsel does not have the ability to present argument through the perspective of a trained and experienced law enforcement officer, detective, supervisor, and administrator who has both explained the existence of factual support for probable cause to obtain warrants, and reviewed

---

[23] Doc. 135-2, p. 5 (Englade Expert Report).

[24] Transcript of Dec. 20, 2021 Deposition of Eric Moll, pp. 94:4-16, 202:7-203:17, attached as Ex. B; Transcript of Dec. 13, 2021 Deposition of Cynthia Spoon, pp. 92:13-24, 239:18-25, attached as Ex. C; Transcript of Dec. 15, 2021 Deposition of Sophia Cook-Phillips, pp. 193:14-21, attached as Ex. D.

complaints and participated in internal affairs investigations to evaluate the actions of officers. Former Chief Englade has this experience and perspective, having served as a P.O.S.T. certified officer, detective, supervisor, and administrator for more than thirty years, having explained to judges the factual support for probable cause, having taken trainings on internal affairs investigations, and having examined thousands of instances of alleged misconduct from a disciplinary standpoint.[25]   Although the arresting officers can testify to the facts they were aware of, it is helpful to the jury to have an independent expert not involved in the activity in question, who is trained in reviewing the facts in matters like this, evaluate the facts and explain using his training and experience how these facts are analyzed in the time immediately preceding a decision about whether to make an arrest.

The advisory notes in support of Rule 702 expressly support this conclusion, noting that the application of extensive experience by a law enforcement agent is an appropriate way of using expert testimony.  Fed. R. Evid. 702 (Committee Notes on Rules—2000 Amendment).  Former Chief Englade's diverse and multi-faceted experience in law enforcement, in addition to his related knowledge, skill, training, and education, are what allow him to helpfully analyze the facts and render opinions regarding them.  *Id.*  This is exactly the purpose of an expert. *Keys*, 747 F. App'x at 208; *Olivier*, 596 F. Supp. 3d 606, at *8. Furthermore, this is the same type of analysis apparently deemed helpful by the district courts and Fifth Circuit in *Keys* and *Hayter*, where experts were allowed to render opinions about facts at issue in determining the belief that probable cause existed and whether crimes had been committed.  *See Keys*, 747 F. App'x at 208 (describing allowance of expert to render opinions in response to questions about whether victim had been compelled to engage in commercial sex acts through force, fraud, or coercion, in a specific geographical area,

---

[25] Doc. 135-2, p. 2 (Englade Expert Report).

during a specific time frame); *Hayter*, 154 F.3d at 274 (describing admission of expert's conclusion that no reasonable officer could believe that he or she had probable cause for arrest).

This situation is much like the Western District of Texas's holding in *Scott v. White*, 2019 U.S. Dist. LEXIS 2324, at *18 (W.D. Tex. Jan. 7, 2019), that a patrol officer with six years of experience could help the trier of fact understand the facts of an excessive force case from a reasonable officer's perspective.  Probable cause likewise involves looking at the facts and circumstances from the perspective of an "officer of reasonable caution." *United States v. Carrillo-Morales*, 27 F.3d 1054, 1062 (5th Cir. 1994); *United States v. Williams*, 2020 U.S. Dist. LEXIS 89626, at *17 (M.D. La. May 21, 2020).  Former Chief Englade, with his thirty years of law enforcement experience, including as an officer presenting facts in the probable cause context and in conducting internal affairs investigations to evaluate the actions of officers, can help the trier of fact by providing his analysis of, and perspective on, the facts available to the officers here.

### v. Former Chief Englade's Analysis of this Question Includes Unchallenged Observations and Opinions

Plaintiffs solely take issue with what they incorrectly describe as Former Chief Englade's "opinions on the lawfulness of the arrests."[26]  They do not challenge any other opinions and observations included in his response to the question of "[d]id facts exist within the Probation & Parole officers' knowledge sufficient for them to believe the Plaintiffs had committed the crime of intentionally or negligently obstructing a navigable waterway?"  These other opinions and observations, listed below, should therefore be admitted:

- In blocking the barge, the Plaintiffs endangered their own lives and those of others.

- Blocking a public thoroughfare, including a navigable waterway, creates a foreseeable danger to officers, bystanders, and the demonstrators themselves.

- The Probation & Parole officers witnessed the Plaintiffs put their own lives in danger

---

[26] Memo in Support of Motion to Exclude Englade, pp. 6-8.

#100876836v1

by blocking the barge with small, non-motorized watercraft that were significantly smaller and less sturdy than the barge.

- If the barge had run into the Plaintiffs, they could have been seriously injured or killed, and could have drowned.

- Anyone trying to prevent harm to the Plaintiffs could also have been seriously injured or killed. Others present could have been seriously injured or killed.

- Had the officers not intervened, the Plaintiffs would have been in greater danger than if the officers intervened.[27]

**B. Plaintiffs Present No Basis to Exclude Former Chief Englade's Opinion About Facts Within the Probation & Parole Officers' Knowledge Regarding Eric Moll's Resisting Arrests**

Plaintiffs present no valid basis to exclude Former Chief Englade's opinion about the facts within the Probation & Parole Officers' knowledge regarding Eric Moll's resisting arrests. Contrary to Plaintiffs' argument, Former Chief Englade does not issue a finding of probable cause regarding Eric Moll's resisting arrests. Instead, he addresses the facts within the Probation & Parole officers' knowledge prior to Eric Moll's arrest that Moll pulled on Sophia Cook-Phillips and attempted to get her and Cynthia Spoon away from the Probation & Parole officers attempting to arrest them.[28] Former Chief Englade similarly addresses the facts with the officers' knowledge prior to Moll's arrest that he fled officers and refused to obey their instructions.[29] This opinion is a proper explanation of Former Chief Englade's analysis of the facts and circumstances available to the Probation & Parole officers at the time of Moll's arrest. *Petersen*, 2023 U.S. App. LEXIS 144, at *13; *Keys*, 747 F. App'x at 208. Plaintiffs' argument and authority about experts making probable cause findings are therefore inapposite.

Plaintiffs point to no specific instances related to this opinion where Former Chief Englade

---

[27] Doc. 135-2, pp. 5-6 (Englade Expert Report).
[28] Doc. 135-2, pp. 5-7 (Englade Expert Report).
[29] Doc. 135-2, pp. 5-7 (Englade Expert Report).

16

allegedly makes credibility or fact dispute determinations. The Court should therefore dismiss this argument. *See Jones*, 2018 U.S. Dist. LEXIS 13545, at *15 ("Blue Cross has pointed the Court to no specific 'legal conclusion' that it argues Bernhardt makes. The Court, therefore, denies this portion of the motion . . . .").

Regardless, in rendering this opinion, Former Chief Englade does not make credibility determinations, resolve factual disputes, or accept one of two contested versions of the facts, but instead relies on undisputed facts which are confirmed by Moll's own testimony. As described above, Former Chief Englade addresses Probation & Parole officers' awareness prior to Eric Moll's arrest that Moll pulled on Sophia Cook-Phillips and attempted to get her and Cynthia Spoon away from the Probation & Parole officers attempting to arrest them, as well as the officers' awareness prior to Moll's arrest that he fled officers and refused to obey their instructions.[30] These facts come from Mark Ward, the Probation & Parole officer who arrested Moll,[31] and it is appropriate for Former Chief Englade to rely upon them since his evaluation is of the facts and circumstances available to the Probation & Parole officers at the time of Moll's arrest. *Petersen*, 2023 U.S. App. LEXIS 144, at *13. Former Chief Englade did not need to resolve any fact disputes or make credibility determinations in relying on these facts, because Moll testified in his deposition that he pulled on Sophia Cook-Phillips Cynthia Spoon's canoe to try and get them away from the Probation & Parole officers, and when that was unsuccessful, he attempted to leave the area.[32] Moll's testimony does not contradict that of Officer Ward.

Despite Former Chief Englade's reliance on only undisputed facts for this opinion, the Supreme Court, Fifth Circuit, this Court, and district courts throughout the Fifth Circuit

---

[30] Doc. 135-2, pp. 5-7 (Englade Expert Report).
[31] Doc. 132-20, pp. 92:23-93:20 (Ward Depo); Doc. 132-20, Exhibit 5 to Ward Depo, pp. 1, 3 (Mark Ward Affidavit and Unusual Occurrence Report for Arrest of Eric Moll).
[32] Transcript of Dec. 20, 2021 Deposition of Eric Moll, pp. 96:22-98:13, 202:7-203:17, attached as Ex. B.

categorically reject the notion that an expert's reliance on one side of a disputed set of facts is a basis for exclusion.  As enunciated above, Plaintiffs' apparent factual disagreement with Former Chief Englade is not part of the *Daubert* analysis and is appropriately addressed at trial.

Like Former Chief Englade's opinions on the facts available to the Probation & Parole officers regarding the Plaintiffs obstruction of a navigable waterway, this opinion will help the jury by providing a trained, diversely experienced perspective to the analysis of the facts available to the arresting officers and the perspective and context under which those facts are viewed.

> **C.  Former Chief Englade's Opinion Related to Plaintiffs' Failure to Intervene Claim is Factual, and Will be Helpful to the Jury**

As with Former Chief Englade's first two opinions, Plaintiffs incorrectly construe Former Chief Englade's opinion associated with Plaintiffs' failure to intervene claim as a legal conclusion, when in reality it is a factual opinion in which he analyzes the facts available to the officers in deciding whether or not to intervene.[33]  The ultimate opinion provides "that the other law enforcement officers present during the Plaintiffs' arrests did not possess facts that would have caused them to believe they needed to intervene to stop the arrests, because facts existed within their knowledge sufficient for them to believe the Plaintiffs had committed the crime of intentionally or negligently obstructing a navigable waterway."[34] Former Chief Englade does not tell the jury what the verdict should be, but instead analyzes facts which may be used to support the jury's finding. *Owen*, 698 F.2d 236 at 240, citing Fed. R. Evid. 704 advisory committee's notes; *Keys*, 747 F. App'x at 208 (5th Cir. 2018); *Olivier*, 596 F. Supp. 3d 606, at *8.

This opinion will help the jury, because it provides a trained, diversely experienced perspective to the analysis of the facts available to the arresting officers and the perspective and

---

[33] Doc. 135-2, pp. 3, 7 (Englade Expert Report).
[34] Doc. 135-2, p. 7 (Englade Expert Report).

#100876836v1

context for viewing those facts. Counsel does not have the ability to present this perspective—the perspective of a law enforcement officer, detective, supervisor, and administrator who has evaluated the facts associated with thousands of complaints of police officer misconduct.[35] *Marable*, 1995 U.S. App. LEXIS 42894, at *14. This perspective will be helpful to the jury. *Keys*, 747 F. App'x at 208; *Hayter*, 154 F.3d at 274; *Scott*, 2019 U.S. Dist. LEXIS 2324, at *18.

Furthermore, expert testimony on the facts available to an officer is admissible in addressing a failure to intervene claim. *Ramirez v. Killian*, 2019 U.S. Dist. LEXIS 206688, at *20-21 (N.D. Tex. Aug. 20, 2019). *Ramirez* relied on such testimony, where an expert opined that the defendant would not have had a rational basis to believe the plaintiff was in danger of a violation of her constitutional rights from the arresting officer at the time of the incident in question. *Id.* Former Chief Englade similarly opines that based on the facts available to the officers to believe the Plaintiffs had committed the crime of intentionally or negligently obstructing a navigable waterway, they did not possess facts which would have caused them to believe they needed to intervene and stop the Plaintiffs' arrests. His experienced perspective and analysis is admissible, and will be helpful to the jury.

### D. Former Chief Englade's Opinions Related to Use of Force are Factual, are Not Legal Conclusions because this Case does not Include an Excessive Force Claim, are Mostly Unchallenged, and Will be Helpful to the Jury

The opinions about the facts and circumstances surrounding the arresting officers' use of force, and that such force was reasonable and necessary, are: (1) mostly unchallenged; (2) factual in nature and not legal conclusions, because this is not an excessive force case; and (3) helpful to the jury, because they involve application of facts by an experienced law enforcement conduct analyst with expertise on the appropriate use of force under the circumstances.

---

[35] Doc. 135-2, pp. 2-4 (Englade Expert Report).

### i. Most of Former Chief Englade's Opinions Related to Use of Force are Unchallenged, and Should Therefore be Admitted

Plaintiffs argue Former Chief Englade's "opinion on the reasonableness of the force used by the P&P Defendants is a legal conclusion."[36] This relates to the opinion that "reasonable and necessary force was used to complete the Plaintiffs' arrests, nothing more." This is not the only opinion by Former Chief Englade related to use of force, as he also opines and observes:

- Law enforcement officers must deal with people that totally comply and others that will resist until they cannot fight anymore.

- Officers are taught to deescalate a situation with talking and communicating with a suspect. If the suspect does not comply, the officers are allowed reasonable force to make an arrest.

- Attempting to handcuff individuals by law enforcement can be very difficult, especially with the suspects not complying with the arrest. None of the depositions, videos, probable cause affidavits, or unusual occurrence report indicate that any of the Plaintiffs complied with the officers conducting their handcuffing and arrest. To the contrary, Eric Moll fled officers and refused to obey their instructions. Cynthia Spoon and Sophia Cook-Phillips continuously attempted to avoid being placed in mechanical restraints. When individuals fail to comply like this, additional force is necessary.

- The use of force was proper and consistent with an arrest.

- I did not see any improper use of force in the parts of the arrest that are shown on the videos. The manner in which the Probation & Parole officers dealt with and handled the Plaintiffs was calm, collected, restrained, controlled, and not violent. The officers used soft hand control, which is the lowest level of force.

- In the cases of Ms. Cook-Phillips and Mr. Moll, it is undisputed that they did not suffer any physical injuries, which they state in their depositions. I have also seen no indication that any of the Plaintiffs requested or received medical attention prior to or after being booked into jail. Ms. Spoon, the only Plaintiff claiming to have suffered physical injuries, stated in her deposition that she did not pursue any medical treatment near the time of her arrest or in the months that followed. This also supports the conclusion that there was no excessive or improper use of force upon them.[37]

---

[36] Memo in Support of Motion to Exclude Englade, pp. 8; Doc. 135-2, p. 7 (Englade Expert Report).
[37] Doc. 135-2, pp. 7-8 (Englade Expert Report).

#100876836v1

These opinions and observations, although providing support for the opinion that reasonable and necessary force was used, are separate from that opinion and should each be evaluated separately. *See*, *e.g.*, *Jones*, 2018 U.S. Dist. LEXIS 13545, (evaluating each opinion independently).  Because they are not specifically challenged, they should be admitted.

> ii. **Former Chief Englade's Opinion on the Reasonableness of Force is a Factual Analysis that will Assist the Jury, and not a Legal Conclusion, as this Case does not Include an Excessive Force Claim**

Plaintiffs do not assert an excessive force claim in this lawsuit, so the jury will not be asked to reach a verdict on whether the Probation & Parole officers utilized excessive force on them.[38] Although, under Louisiana law, the use of excessive force during a lawful arrest removes the arresting officers' shield from liability for battery, Plaintiffs have made no claim in this lawsuit that the force used against them would be considered excessive if their arrests were lawful.[39] *Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1135 (5th Cir. 2014).  Plaintiffs assert claims of assault and battery resulting from the physical contact occurring during their allegedly *unlawful* arrests, including in their Amended Complaint the statement that:

> Defendants intended to inflict a harmful or offensive contact upon Plaintiffs in the process of arresting them. As the arrests and detention were unjustified by legal authority, Defendants have committed the intentional torts of assault, battery, false arrest and imprisonment.[40]

If the jury reaches a verdict that the Plaintiffs' arrests were unlawful, it will be asked if the arresting officers committed assault and battery on the Plaintiffs by way of their use of force on them.  None of Former Chief Englade's opinions related to use of force, including his opinion that reasonable and necessary force was used to complete the Plaintiffs' arrests, tells the jury how to answer the question, because he does not address use of force in the event of an unlawful arrest. *Owen*, 698

---

[38] Doc. 28 (Amended Complaint).
[39] Doc. 28 (Amended Complaint).
[40] Doc. 28, ¶¶ 92-95 (Amended Complaint).

F.2d 236 at 240, citing Fed. R. Evid. 704 advisory committee's notes.

To the contrary, Former Chief Englade uses his extensive experience as a law enforcement administrator and internal affairs investigator evaluating thousands of cases of alleged police misconduct, including use of force (for which he assisted in writing the Baton Rouge Police Department rules and regulations), to evaluate the facts and circumstances surrounding the arresting officers' use of force and apply it to the appropriate use of force standards.[41] In doing so, Former Chief Englade not only conducts an appropriate factual analysis, allowed by the authority above distinguishing such analysis from legal conclusions, but he also provides the jury with the helpful information and factual analysis that will assist them in determining if the officers truly intended to inflict harm or offensive contact on the Plaintiffs as part of a lawful arrest. *Keys*, 747 F. App'x at 208; *Olivier*, 596 F. Supp. 3d 606, at *8.

Former Chief Englade's analysis is important, because Plaintiffs make reference throughout their Amended Complaint to the physical manner in which they were handled, and Bayou Bridge should be able to address that topic by presenting testimony that this was reasonable and appropriate under the circumstances, in the event of a lawful arrest.  It is appropriate for Former Chief Englade to apply his extensive law enforcement experience and offer this opinion, which provides a foundation that lawyers cannot offer in argument. Fed. R. Evid. 702 (Committee Notes on Rules—2000 Amendment); *Marable*, 1995 U.S. App. LEXIS 42894, at *14.

Each of Plaintiffs' authorities cited in support of their efforts to exclude this opinion address reasonableness of force opinions offered in response to excessive force claims, meaning that the reasonableness of force was a legal conclusion to be made by the factfinder.[42]  The jury in

---

[41] Doc. 135-2, p. 2-4, 7-8 (Englade Expert Report).
[42] *McBroom v. Payne*, 478 F. App'x 196, 197 (5th Cir. 2012); *Day*, 2020 U.S. Dist. LEXIS 223670, at *3; *Gage v. Jenkins*, 2017 U.S. Dist. LEXIS 75785, at *2 (M.D. La. May 18, 2017); *Haynes v. Parker*, 2017 U.S. Dist. LEXIS

this case is tasked with making no such finding. Former Chief Englade's opinion is properly offered as a factual analysis to help the jury evaluate Plaintiffs' assault and battery claims, and the overarching narrative that Plaintiffs were mishandled during their arrests.  Plaintiffs' authorities are therefore inapplicable.  Even so, the Western District of Texas's decision in *Scott v. White* demonstrates there is not uniformity among courts in holding reasonableness of force opinions are not allowed in excessive force cases, as it allowed expert opinions on reasonableness of force on the basis that the expert's experience and training would aid the jury in assessing the facts from a reasonable officer's perspective.  2019 U.S. Dist. LEXIS 2324, at *19.  As this is not even an excessive force case, and reasonableness of the officers' force will not appear on the verdict form, there is much less concern in allowing such an opinion here.

### E.    Former Chief Englade's Opinions on the Use of Off-Duty Law Enforcement in Security Details are Helpful to the Jury and Admissible

Former Chief Englade's opinions regarding the use of off-duty law enforcement in security details are admissible and will be helpful to the jury in understanding this foundational aspect of the case that Plaintiffs' allege occurred to further nefarious and illegal activity.

One of the factual foundations for this case is the security apparatus for construction of the Bayou Bridge Pipeline, which included three levels of security contractors, and ended on the ground with off-duty Probation & Parole officers and St. Martin Parish Sheriff's Deputies contracted to work security details.  Plaintiffs allege these off-duty law enforcement officers were contracted by Bayou Bridge and/or HUB for the purpose of making felony arrests to end protests against the Bayou Bridge Pipeline.[43]  Plaintiffs further allege the off-duty law enforcement officers

---

37842, at *2 (M.D. La. Mar. 16, 2017).  *Harris v. City of Baton Rouge*, No. 03-640, 2005 WL 6009992 (M.D. La. Apr. 8, 2005), does not specifically address opinions about the reasonableness of use of force.

[43] Doc. 28, ¶ 33 (Amended Complaint).

#100876836v1

acted in concert with Bayou Bridge and/or HUB in engaging in illegal activity.[44]    Plaintiffs questioned the law-enforcement parties to this case extensively on their involvement in off-duty security details and their department policies regarding such details.[45]

Rule 702 "recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Fed. R. Evid. 702 advisory committee's notes. An expert is allowed to "educate the factfinder about general principles" when (1) the expert is qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony is reliable; and (4) the testimony fits the facts of the case. *United States v. Murra*, 879 F.3d 669, 679 (5th Cir. 2018), quoting Fed. R. Evid. 702 advisory committee's notes (2000). "The trial judge must have discretion to discern the needs presented by a particular case and the forms of expert testimony that may best guide the jury over unfamiliar terrain." *United States v. Milton*, 555 F.2d 1198, 1205 (5th Cir. 1977).

Plaintiffs have raised no challenge to Former Chief Englade's qualifications or that his opinions related to the use of off-duty law enforcement for security details are not reliable.  The testimony fits the facts of the case, since the use of off-duty law enforcement for security details is a foundational aspect of the case that Plaintiffs focus on as part of their allegations.  The jury will be assisted by this testimony because an average person sitting on the jury is unlikely to know about the standard use of off-duty law enforcement for security details, the benefits of using off-duty law enforcement, including how some of those benefits applied in the circumstances at issue in this case.  Former Chief Englade has the experience to do this, having created the Baton Rouge

---

[44] Doc. 28 (Amended Complaint).

[45] Transcript of Dec. 14, 2021 Deposition of Angela Adams, pp. 27:15-32:9, attached as Ex. F; Transcript of Dec. 14, 2021 Deposition of Jon Barbera, pp. 28:4-33:8, 33:9-40:14, attached as Ex. G; Transcript of Jan. 10, 2022 Deposition of Richard Chris Martin, pp. 27:4-29:6, attached as Ex. H; Ex. E, pp. 19:5-22:25 (Matherne Depo); Transcript of Aug. 18, 2022 Deposition of Lieutenant Colonel Terry Guidry, pp. 24:9-29:7, attached as Ex. I; Transcript of Jan. 28, 2022 Deposition of Waversun Guidry, pp. 37:1-43:16, attached as Ex. J; Transcript of Dec. 9, 2021 Deposition of Mark Ward, pp. 35:2-39:18, attached as Ex. K.

Police Department "extra duty" office to track, maintain, and approve off-duty security assignments, and having personally worked "extra duty" or off-duty security details for years during his more than thirty years in law enforcement.[46]  Fed. R. Evid. 702 (Committee Notes on Rules—2000 Amendment); *Marable*, 1995 U.S. App. LEXIS 42894, at *14.

Particularly given Plaintiffs' attempt to show off-duty law enforcement were contracted for an illegal purpose, it is important that Bayou Bridge be able to present experienced expert testimony of background and context in which to view that allegation and narrative, and to dispel the notion created by Plaintiffs' argument that use of off-duty law enforcement for security details is improper and nefarious, or is otherwise out of the ordinary.  Regardless, "the reliability of such testimony and its 'fit' to the facts of the case may be explored through cross-examination." *Goodie v. ExxonMobile Oil Corp.*, 2014 U.S. Dist. LEXIS 55033, at *3-4 (E.D. La. Apr. 17, 2014).

"This type of testimony is permissible because it is based on specialized knowledge, and is admitted to aid the jury in understanding a fact in issue"—the use of off-duty law enforcement for security details associated with the Bayou Bridge Pipeline's construction. *United States v. Buchanan*, 70 F.3d 818, 832 (5th Cir. 1995).  The opinion should therefore be admitted.

## IV.    CONCLUSION

Plaintiffs disagree with Former Chief Englade's opinions, but their disagreement is no basis for exclusion.  Former Chief Englade's opinions are admissible because they are not legal conclusions, do not make credibility determinations, and will be helpful to the jury as it evaluates the Plaintiffs' claims and the Defendants' defenses.  Plaintiffs' motion should be denied.

Respectfully submitted,

*/s/ F. Gibbons Addison*
James C. Percy (La. Bar No. 10413) (Lead Attorney)
F. Gibbons Addison (La. Bar No. 35426)

---

[46] Doc. 135-2, pp. 2-3 (Englade Expert Report).

25

Jones Walker, LLP
445 North Boulevard, Suite 800
Baton Rouge, Louisiana  70802
Telephone: (225) 248-2130
Fax: (225) 248-3130
Email:  jpercy@joneswalker.com
Email:  gaddison@joneswalker.com
*Attorneys for Bayou Bridge Pipeline LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2023, a copy of the foregoing was filed electronically using the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all known counsel of record by operation of the Court's electronic filing system.

*/s/ F. Gibbons Addison*
F. Gibbons Addison

#100876836v1