## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CYNTHIA SPOON, ET AL.<br>*Plaintiffs*,<br><br>vs.<br><br>BAYOU BRIDGE PIPELINE LLC, ET AL.,<br>*Defendants* | CIVIL ACTION<br><br>NO. 19-516-SDD-SDJ<br><br>JUDGE SHELLY D. DICK<br><br>MAGISTRATE SCOTT D. JOHNSON |

## REPLY MEMORANDUM IN SUPPORT OF BAYOU BRIDGE PIPELINE LLC'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs have produced evidence that Bayou Bridge contracted security for the construction of a pipeline it owns, and that as owner of the project, it stayed informed about the project, and communicated with its independent security contractor, Hillard Heintze, about the cost for security services and the scope of work to be performed pursuant to the Professional Services Agreement between the two parties. Plaintiffs have presented evidence of nothing more.

The evidence does not come close to proving the serious allegations that the Plaintiffs have repeated throughout this lawsuit. Plaintiffs have continuously stated that:

- "To silence the growing dissent about the construction of the Bayou Bridge Pipeline, BBP and HUB contracted with law enforcement officials to make felony arrests of protesters of the Pipeline."[1]
- "BBP with its contractor HUB entered into a 'preconceived plan' with the law enforcement Defendants to make felony arrests of pipeline protesters."[2]

Plaintiffs now admit that:

- There is "no evidence of Bayou Bridge communicating with any Probation & Parole Officers, much less making arrangements for arrests of protesters or the Plaintiffs, or that they directed the Probation & Parole Officers charge the Plaintiffs with violations of La. R.S. § 14:61."[3]
- "There is no evidence of any alleged arrangements between Bayou Bridge and Sheriff

---

[1] Doc. 28 (Amended Complaint), ¶ 29.
[2] Doc. 42, p. 6 (Plaintiffs' Opposition to Bayou Bridge Motion to Dismiss).
[3] Doc. 173-1, p. 23 (Response to BBP's Statement of Uncontested Material Facts No. 13).

Theriot, or any alleged direction by Bayou Bridge to the Sheriff Defendants."[4]

- The only Bayou Bridge communication with HUB that was produced in discovery was to welcome HUB aboard.[5]
- "There is no evidence of substantive security-related communications between Bayou Bridge and anyone other than Hillard Heintze, Bayou Bridge's security contractor."[6]

Despite admittedly not having evidence that supports their allegations, Plaintiffs continue to try and hold Bayou Bridge liable by presenting assumptions, argument, inaccurate "facts," and immaterial facts, sometimes coupled with inaccurate law.

Plaintiffs' arguments fail because there is no evidence that Bayou Bridge agreed to a preconceived plan to unlawfully arrest the Plaintiffs, probable cause existed to arrest the Plaintiffs, and there is no basis for Bayou Bridge to be held liable for alleged intentional torts of third parties.

## I. Plaintiffs Present No Evidence of an Alleged Agreement Between Bayou Bridge and Anyone Else to Commit an Illegal Act, So They Cannot Satisfy Their Burden

Plaintiffs do not attempt to, and cannot, meet their burden to hold Bayou Bridge liable for the Section 1983 claim underpinning all of their claims. Plaintiffs cannot meet either of the two tests they present for holding Bayou Bridge, a private citizen, liable. The tests require:

1. Demonstrating that the private citizen was a willful participant in joint activity with the State or its agents; or
2. Demonstrating that the citizen conspired with or acted in concert with state actors.[7]

*Stire v. Watson*, 2013 U.S. Dist. LEXIS 106550, at *6 (E.D. La. July 30, 2013), quoting *Glotfelty v. Karas*, 512 F. App'x 409, 414 (5th Cir. 2013). Both of these standards require an agreement between Bayou Bridge and the public defendants to commit an illegal act, but Plaintiffs present no such evidence, so they cannot meet their burden.

To meet their burden for the first test requiring that Bayou Bridge was a "willful participant

---

[4] Doc. 173-1, p. 23 (Response to BBP's Statement of Uncontested Material Facts No. 12).
[5] Doc. 173-1, pp. 22 (Response to BBP's Statement of Uncontested Material Facts No. 7).
[6] Doc. 173-1, pp. 21 (Response to BBP's Statement of Uncontested Material Facts No. 6).
[7] Doc. 173, p. 5 (Opp. to Bayou Bridge MSJ).

#100938892v4

in joint activity with the State or its agents," Plaintiffs must present evidence of "an agreement between the private and public defendants to commit an illegal act." *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004). To meet their burden for the second test requiring that Bayou Bridge "conspired with or acted in concert with state actors," Plaintiffs must also present evidence of "an agreement between the private and public defendants to commit an illegal act." *Glotfelty*, 512 F. App'x at 414. Expanding on this burden, because Plaintiffs claim Bayou Bridge, a private party, acted under color of state law as part of an unlawful arrest, Plaintiffs "must demonstrate the existence of a 'preconceived plan' for the authorities to arrest [them] without investigation, merely because [they were] designated for arrest by [Bayou Bridge]." *Id.*

Plaintiffs do not attempt to show any agreement or preconceived plan between Bayou Bridge and P&P (the only individuals who made arrests) to unlawfully arrest them. To the contrary, Plaintiffs admit each Bayou Bridge individual possessing relevant knowledge about the project's security had no communications with Probation & Parole ("P&P).[8] Similarly, Plaintiffs do not attempt to present evidence of any agreement or meeting of the minds between Bayou Bridge and the Sheriff's Office to unlawfully arrest them.[9] Nor do Plaintiffs attempt to show any agreement or preconceived plan between Bayou Bridge and any other party to unlawfully arrest them.

The law requires evidence of such a preconceived plan between Bayou Bridge and the state actors whereby the Plaintiffs were *designated for arrest by Bayou Bridge*. *Glotfelty*, 512 F. App'x at 414.  Plaintiffs recognize this, having told the Court in opposition to Bayou Bridge's motion to dismiss that they would present evidence of such a plan.[10]  Now, Plaintiffs solely attempt to show

---

[8] Doc. 173-1, pp. 20-21 (Response to BBP's Statement of Uncontested Material Facts No. 3).
[9] Doc. 173, pp. 4-17 (Opp. to Bayou Bridge MSJ).  Plaintiffs only allege a single communication between Bayou Bridge and the Sheriff's Office—a communication that does involve an agreement to unlawfully arrest protesters. Doc. 173-1, pp. 20-21 (Response to BBP's Statement of Uncontested Material Facts No. 3).
[10] Doc. 42, p. 6 (Plaintiffs' Opposition to Bayou Bridge Motion to Dismiss).

#100938892v4

Bayou Bridge engaged in conversations with its security contractor that ultimately led to hiring of off-duty law enforcement for security, and that HUB (not Bayou Bridge) directed P&P officers and Sheriff deputies via text message to arrest protesters for unauthorized entry of critical infrastructure.[11] Even on their face, these "facts" are not evidence that Bayou Bridge—about whom Plaintiffs must independently present evidence to satisfy this test—was part of any agreement or preconceived plan to arrest protesters without investigation, in which Bayou Bridge specifically designated the targets for unlawful arrest.[12] *Priester*, 354 F.3d at 420; *Glotfelty*, 512 F. App'x at 414-15. Plaintiffs therefore cannot satisfy their burden.

### A. Plaintiffs Present No Competent Summary Judgment Evidence that an Authorized Representative of Bayou Bridge Directed Plaintiffs' Arrests

The "facts" Plaintiffs argue show that P&P officers and Sheriff Deputies were directed to make arrests of protesters for unauthorized entry of critical infrastructure, though incomplete and out of context, similarly are not evidence of anything involving Bayou Bridge. They do not include any communications from Bayou Bridge, and do not mention any direction from Bayou Bridge.[13]

Plaintiffs' argument about an individual allegedly named "Larry" is likewise not evidence of any alleged direction by Bayou Bridge. Plaintiffs have not even presented competent summary judgment evidence of this individual's identity, and they rely on a series of unsubstantiated assumptions to claim he was Bayou Bridge's representative. For there to be any competent

---

[11] The "fact" about Bayou Bridge directing use of law enforcement officers is not supported by evidence, as demonstrated in Section IV(A)(2), below.  Although Plaintiffs' "facts" cannot help them meet their burden, many are inaccurate, misleading, or immaterial.  Bayou Bridge describes these issues more specifically in its attached Reply Statement of Material Facts.

[12] Plaintiffs are merely trying to hold Bayou Bridge liable for being the owner of a construction project for which it contracted security. This runs afoul of the purpose of holding private parties liable under Section 1983—imposing liability where the private party agreed to a plan to do something illegal. Here, the Plaintiffs have merely attempted to present "facts" showing that Bayou Bridge contracted for security. They have not even attempted to present evidence that Bayou Bridge agreed to a preconceived plan to conduct unlawful arrests—the crux of their case against Bayou Bridge that they have been trumpeting since the filing of this lawsuit.

[13] Doc. 173 (Opp. to Bayou Bridge MSJ), pp. 11-14.

summary judgment evidence that the unidentified individual referred to as "Larry" was Bayou

Bridge's "authorized representative at the construction site," each of the following has to be true:

| Plaintiffs' Assumption | Actual Evidence | Evidentiary Problem |
|---|---|---|
| "One of the other construction workers called the man in orange 'Larry' during this encounter."[14] | Plaintiffs cite no evidence for this proposition. | Unsubstantiated assertion. |
| "Carl Ledet, Sr., the foreman for Sunland Construction on the site, believed that 'Larry' was an inspector for Bayou Bridge. Ledet **assumed** that Larry worked for Bayou Bridge 'because that's who inspectors work for.'"[15] | "Q Okay. So you think he was an Inspector, correct?<br>A Yes, sir.<br>Q All right. Now, I need to ask you –- just as I asked you the questions about who employed you what company paid your wages what company was your employer -- do you have any knowledge of your own personal knowledge not what somebody told you but of your own personal knowledge do you have any idea what company actually employed that individual in the orange shirt?<br>A No, sir.<br>Q Do you know who paid the salary of that individual in the orange shirt?<br>A I would assume it would be –-<br>Q I'm not asking you to assume.<br>A Okay.<br>Q I'm asking you what you know of your own personal knowledge.<br>A I don't know who was paying him."[16] | Unsubstantiated assumption, contradicted by witness's own testimony. |
| "In their First Set of Answers to Plaintiffs' Interrogatories, BBP stated that it contracted with two companies, Hillard Heintze and Frontier Integrity Solutions ("FIS"), to provide security for construction of the pipeline."[17] | Bayou Bridge amended its discovery responses to state otherwise:<br><br>"The only reason the [initial] response stated Bayou Bridge Pipeline contracted with Frontier Integrity Solutions for security associated with the pipeline's construction is because Wendell Fontenot, "law enforcement liaison" for the project, served as a contractor through Frontier Integrity Solutions. However, Frontier Integrity Solutions is not a security company, Frontier Integrity Solutions did | Not evidence that Frontier Integrity Solutions provided security for construction of pipeline. |

---

[14] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 15.
[15] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 15 (emphasis added).
[16] Doc. 159-24, pp. 5-6 (Carl Ledet, Sr. Depo, pp. 96:19-97:14).
[17] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 15.

#100938892v4

| | | |
|---|---|---|
| | not work security details associated with the Bayou Bridge Pipeline's construction, and Wendell Fontenot did not work any security details. Hillard Heintze was Bayou Bridge's security contractor for security associated with the Bayou Bridge Pipeline's construction in Louisiana."[18] | |
| Eric Moll looked at pictures from a Facebook page under the name "Larry Gordon," and Moll recognizes Larry Gordon as the "Larry" in the orange shirt who was present on the day of the arrests.[19] | None. This is not evidence. | Speculation, hearsay, lack of personal knowledge.[20] |
| "'Larry' was an on-site inspector" named Larry Gordon.[21] | None. Plaintiffs recently admitted to this Court that they cannot identify him and do not know if he is Larry Gordon:<br><br>"If he is the figure depicted in the videos of the events immediately preceding Plaintiffs' arrests, Larry Gordon pointed to Plaintiffs and said, 'You need to arrest those three. They're in the right-of-way. I'm filing charges. Plaintiffs attempted to identify 'Larry' throughout the discovery period, showing the videos of 'Larry' to multiple deponents and asking them to identify him. None of those deponents could identify 'Larry' by name."[22] | Unsubstantiated series of assertions and assumptions, contradicted by Plaintiffs' representations to this Court and the actual evidence they relied upon in making those representations. |
| The INGAA Foundation's alleged A Practical Guide for Pipeline Construction Inspectors provides an inspector is the owner company's authorized representative for non-financial matters.[23] | None. This alleged document, which Plaintiffs fail to attach, is not evidence of anything. There is no evidence Bayou Bridge is somehow bound by it, of its context, or of how it could negate Bayou Bridge's contracts with its independent contractors, including Frontier Integrity Solutions.<br><br>The determination of whether this individual is Bayou Bridge's authorized representative is a question of law. This is not the law. | Unsubstantiated assertion, lack of foundation, hearsay.[24] |

---

[18] Doc. 132-13, p. 11 (Bayou Bridge Revised Second Amended Responses to Plaintiffs' Discovery Requests).
[19] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 15.
[20] Bayou Bridge objects to this being considered as admissible evidence.
[21] Doc. 173 (Opp. to Bayou Bridge MSJ), pp. 15-16.
[22] Doc. 115, p. 4 (Plaintiffs' Supplemental Motion for Leave to Subpoena Discovery from Larry Gordon).
[23] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 16.
[24] Bayou Bridge objects to this being considered as admissible evidence.

#100938892v4

The foregoing illustrates that there is no competent summary judgment evidence of this individual's identity, anything about him, or any connection between him and Bayou Bridge. There is not even competent summary judgment evidence that his name is "Larry." Nor is there competent summary judgment evidence to allow the Court to jump through each subsequent hoop required to find evidence that he was an inspector, that he worked for Frontier Integrity Solutions, that his name is Larry Gordon, and that he was Bayou Bridge's authorized representative. There can be no genuine dispute of fact when the dispute is supposedly based on Plaintiffs' guesses, contradicted by their representations to this Court, unsupported by evidence and based on a Plaintiff's inadmissible review of facebook pictures, tied together by a legal conclusion using an inadmissible document that Plaintiffs apparently found on the internet but do not attach.

This is especially true when the only evidence about this unidentified individual is that he is not an employee of Bayou Bridge,[25] and with Bayou Bridge having presented undisputed competent summary judgment evidence that it did not give instructions or guidance to detain protesters.[26] As Bayou Bridge Security Project Manager Rodney Winch testified, "we don't instruct law enforcement on what laws to arrest people under. That's not our role."[27]

## II.    The Existence of Probable Cause for Plaintiffs' Arrests Remains Undisputed

Trying to prevent summary judgment based on the probable cause that existed to arrest them for obstructing a navigable waterway, Plaintiffs make multiple unsupported legal arguments, inaccurately claim they had no notice of this defense, and present contradictory testimony to try and negate their own admissions. None of these things creates a genuine dispute of material fact, or prevents proper dismissal of all of Plaintiffs' claims due to the existence of probable cause to

---

[25] Doc. 132-2, p. 2 and n. 6 (Bayou Bridge Memo in Support of MSJ).
[26] Doc. 132-2, p. 12 and n. 64 (Bayou Bridge Memo in Support of MSJ).
[27] December 28, 2021 Deposition of Rodney Winch, pp. 112:6-16, attached as Ex. A.

#100938892v4

arrest Plaintiffs for the crime of obstructing a navigable waterway. Plaintiffs cannot proceed to trial on an unlawful arrest claim, despite having been lawfully arrested with probable cause.

**A.  Bayou Bridge's Probable Cause Argument is Not a Component of Qualified Immunity**

Plaintiffs' argument—that probable cause for an uncharged offense arises under qualified immunity—relies on a single incorrectly cited case that does not even address this topic. *Pasco v. Knoblauch*, 566 F.3d 572, 574 (5th Cir. 2009), does not address probable cause at all. It does not address in any way, shape, or form whether the presentation of probable cause for an uncharged offense has any relation to the defense of qualified immunity.

Plaintiffs have not presented a single authority that stands for the proposition that Bayou Bridge's argument falls under qualified immunity, and Plaintiffs' proposition is contradicted by the authority demonstrating probable cause and qualified immunity are evaluated separately, and involve application of different standards. While it makes sense that probable cause is often addressed as part of qualified immunity, since qualified immunity addresses whether officers violated a federal constitutional right, qualified immunity does not encompass the law providing that false arrest claims fail due to the existence of probable cause for an uncharged offense.

The U.S. Supreme Court in *District of Columbia v. Wesby*, 138 S.Ct. 577, 585-89 (2018), granted summary judgment on a false arrest claim, finding probable cause for a warrantless arrest because the arresting officers had facts suggesting a "substantial chance of criminal activity," not necessarily probable cause for the specific crime the plaintiffs were charged with. In finding probable cause for a crime based on the general suggestion of unspecified criminal activity, the Supreme Court separately addressed the issues of probable cause and qualified immunity, demonstrating the distinction between the two. *Id.* at 585-93. The Supreme Court held "the undisputed facts here are sufficient to resolve both probable cause and qualified immunity." *Id.* at

584 n. 1. The Supreme Court's distinction between the two is further evident in its holding that "[e]ven assuming the officers lacked actual probable cause to arrest . . . , the officers are entitled to qualified immunity."[28] *Id.* at 591.

As pointed out in Bayou Bridge's motion, the seminal authority holding that probable cause for any crime prevents a successful false arrest claim is *Devenpeck v. Alford,* 543 U.S. 146, 152-55 (2004). This premise, often referred to as the "*Devenpeck* standard," is a legal rule that *Devenpeck* did not limit to any certain situation. That is why, when used in conjunction with qualified immunity, courts state they are "[a]pplying the *Devenpeck* standard in the qualified immunity context." *See, e.g.*, *Hebert v. Maxwell*, 214 F. App'x 451, 454 (5th Cir. 2007).[29] When not applying it to qualified immunity context, the Fifth Circuit likewise applies the *Devenpeck* standard. *See United States v. Bain*, 135 F. App'x 695, 696 (5th Cir. 2005) ("An arrest does not violate the Fourth Amendment if the officer making the arrest has probable cause to arrest the defendant for any crime, regardless of whether the defendant can be lawfully arrested for the crime for which the officer states or believes he is making the arrest."), citing *Devenpeck*, 543 U.S. 146.

The existence of probable cause based on an uncharged offense is not a component of qualified immunity, as also demonstrated by the different legal standards for: (1) the existence of probable cause defeating a false arrest claim as a matter of law; and (2) the objective reasonableness of believing probable cause exists providing qualified immunity from a false arrest suit. Probable cause defeating a false arrest claim, as is at issue here, evaluates "whether, given the

---

[28] As in *Wesby*, the Southern District of New York demonstrated the difference between the two standards in practice, stating, separate and apart from qualified immunity, that "[t]he existence of probable cause to arrest - even for a crime other than the one identified by the arresting officer - will defeat a claim of false arrest under the Fourth Amendment". *Overby v. Fabian*, 2018 U.S. Dist. LEXIS 114525, at *22 (S.D.N.Y. July 10, 2018).

[29] To the extent Plaintiffs cite *Club Retro LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009), and *Loupe v. O'Bannon*, 2018 U.S. Dist. LEXIS 4054, at *11-12 (M.D. La. Jan. 8, 2018), in support of this argument, these cases do not prove Plaintiffs' point. Both decisions merely stated underlying false arrest law—which is applicable in any false arrest case—as they evaluated motions based on qualified immunity. *Id.*

facts known to the officer, he had probable cause to arrest the defendant for a crime." *Hebert*, F. App'x at 454. The separate standard for qualified immunity is "whether, given the facts known to [the officer], he could have *reasonably believed* he had probable cause to arrest [the plaintiff]." *Id.* (emphasis added). The difference is the actual existence of probable cause, as exists here, versus the reasonable belief about existence of probable cause, as is evaluated in the qualified immunity context. The Northern District of Texas concisely placed these standards side by side in holding an officer "either had probable cause to seize the vehicle or an objectively reasonable belief that he had probable cause." *Gordy v. Cowan*, 1996 U.S. Dist. LEXIS 23311, at *12 (N.D. Tex. Aug. 27, 1996); *see Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 297 (E.D. N.Y. 2010) ("Qualified immunity does not require probable cause, but rather 'arguable probable cause,' meaning that it was objectively reasonable for the officer to believe that probable cause existed or that officers of reasonable competence could disagree on whether the probable cause test was met.").

Bayou Bridge does not need to assert qualified immunity, and it has not done so. Plaintiffs present no actual support for their argument, which runs contrary to Supreme Court, Fifth Circuit, and district court authority. Bayou Bridge's probable cause argument, and the law it is based on, are not components of qualified immunity and may be appropriately considered by the Court.

**B. Bayou Bridge's Probable Cause Argument is Not an Affirmative Defense that it Was Required to or Failed to Plead**

As with Plaintiffs' argument regarding qualified immunity, Plaintiffs do not cite a single authority providing that probable cause for an uncharged crime is an affirmative defense. Furthermore, Plaintiffs received notice months prior to propounding discovery and taking depositions that a principal legal issue in the case was whether probable cause existed at the time of their arrests for the crime of obstructing a navigable waterway. Plaintiffs then actually obtained evidence regarding their obstruction of a navigable waterway.

### 1. Plaintiffs Present No Authority Supporting Their Argument

Plaintiffs represent to the Court that *Pasco*, discussed above, holds "the alternative probable cause defense must be raised as an affirmative defense."[30] This is false. *Pasco* does not address probable cause, does not address probable cause for an uncharged offense, does not say probable cause for an uncharged defense is an affirmative defense, and does not address what constitutes an affirmative defense. 566 F.3d 572. *Pasco* does not say anything supporting Plaintiffs' argument. It solely says qualified immunity is an affirmative defense, and that failing to raise it prior to a motion for summary judgment does not necessarily waive it. *Id.* at 577-78.

As admitted by Plaintiffs, "[a]n affirmative defense is an assertion raising new facts and arguments that, if true, will defeat plaintiff's claim, even if all allegations in complaint are true,"[31] *Domingue v. TA Operating, LLC*, 2023 U.S. Dist. LEXIS 6679, at *4 (M.D. La. Jan. 12, 2023). This Court, in *Domingue v. TA Operating, LLC*, recently differentiated between "[t]he pleading requirements for defenses and affirmative defenses," as "set forth in Federal Rules of Civil Procedure 8(b) and (c)." 2023 U.S. Dist. LEXIS 6679, at *4. "A 'defense' under Rule 8(b) is defined as a stated reason why the plaintiff has no valid case. An 'affirmative defense' under Rule 8(c) is an assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true." *Id.* While "[a]ffirmative defenses must be pled with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced," the standard sets forth no such notice standard for "defenses." *Id.*

Bayou Bridge's argument that probable cause existed to arrest Plaintiffs for the crime of obstructing a navigable waterway is a defense, not an affirmative defense, because it demonstrates the invalidity of Plaintiffs' case rather than defeating Plaintiffs' claims if they were proved true.

---

[30] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 24 n 125.
[31] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 24 n 125.

Plaintiffs pled the following in their Amended Complaint, all of which Bayou Bridge denied[32]:

- "On August 9, 2018, Defendants acted jointly to unlawfully arrest Plaintiffs . . . ."

- "P&P and SMPSO Defendants acting at the behest of and in conjunction with BBP and HUB, detained, arrested, and imprisoned Plaintiffs with neither reasonable suspicion nor probable cause to believe **a crime** had been committed."

- "Plaintiffs were engaged in protected First Amendment activity on a navigable waterway when they were arrested on August 9, 2018. P&P and SMPSO Defendants lacked probable cause for their arrests, whether for a violation of the crime alleged in the arrest affidavits **or for any other crime**."

- "Defendants' seizure of Plaintiffs was unreasonable and without probable cause"

- "As the arrests and detention were unjustified by legal authority . . . ."

Plaintiffs' entire case is based upon an allegation of false arrests. They expressly pled that the arrests were unlawful, and that they lacked probable cause, "**whether for a violation of the crime alleged in the arrest affidavits or for any other crime.**"[33] This is part of their case, they pled it, and they must prove it.

"A plaintiff must show an arrest lacked probable cause to prove false arrest." *Keping Xie v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 2021 U.S. App. LEXIS 37005, at *6-7 (5th Cir. Dec. 15, 2021). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S.Ct. at 584 n. 2, citing *Devenpeck*, 543 U. S. 146, 153-155 and n. 2 (2004). Louisiana law, the law under which the Plaintiffs were arrested, confirms that probable cause to arrest need not be for the offense charged, and can be for any offense that can be charged under the circumstances. *State v. Frosch*, 01-1033 (La. 03/22/02); 816 So. 2d 269, 269-70.

Bayou Bridge denied the allegation that the officers who arrested Plaintiffs lacked probable cause for the crimes alleged in their arrest affidavits or any other crime, and Bayou Bridge needed

---

[32] Doc. 28 (Amended Complaint), ¶¶ 1, 69, 74, 89, 93 (emphasis added); Doc. 58 (Bayou Bridge Answer and Affirmative Defenses) Answer, ¶¶ 1, 69, 74, 89, 93.
[33] Doc. 28 (Amended Complaint), ¶¶ 74 (emphasis added).

not plead probable cause for an uncharged offense as an affirmative defense. If probable cause existed to arrest Plaintiffs for any crime—including of an obstruction of a navigable waterway—Plaintiffs' allegations are not true and their claims fail. Bayou Bridge's argument is not an affirmative defense. *Domingue*, 2023 U.S. Dist. LEXIS 6679, at *4.

### 2. Plaintiffs Had Notice of this Defense Months Before Discovery Began

Plaintiffs' statement that they first learned of this defense in December 2022 is incorrect. First, Plaintiffs learned of Bayou Bridge's denial of Plaintiffs' allegations of lack of probable cause for any crime upon receipt of Bayou Bridge's answer. Second, Plaintiffs were notified months before propounding discovery or taking depositions that probable cause for the crime of obstructing a navigable waterway was a principal legal issue in the case.  Plaintiffs therefore had ample notice to undertake discovery on the topic, and their failure to do so is no grounds to prevent summary judgment on this basis.

In January of 2021, months before Plaintiffs propounded discovery, months before the Defendants produced documents, and months before the Plaintiffs took the arresting officers' depositions, the parties filed a joint status report in which Plaintiffs received notice that principal legal issues in this matter included "[w]hether Plaintiffs blocked or attempted to block the movement of a barge or vessel prior to their arrests," "whether these plaintiffs obstructed a navigable waterway prohibited by applicable law," and **"[w]hether there was probable cause to believe that Plaintiffs violated R.S. 14:97 at the time of their arrests."**[34] Plaintiffs *again* received notice that these were principal legal issues in the parties' February 2021 Joint Status Report.[35] R.S. 14:97 is Simple Obstruction of a Navigable Waterway—the exact crime raised in Bayou Bridge's motion for summary judgment. This is definitive evidence that Plaintiffs had

---

[34] Doc. 54, pp. 10-11 (Joint Status Report).
[35] Doc. 59, pp. 10-11 (Joint Status Report).

#100938892v4

ample notice of the exact defense now raised by Bayou Bridge.

The actual probable cause affidavits prepared by the arresting officers, and provided to Plaintiffs early in discovery, also demonstrate Plaintiffs had early notice that the basis for Plaintiffs' arrests included the arresting officers' belief that Plaintiffs were blocking a barge on a waterway—key facts in demonstrating the existence of probable cause for the crime of obstructing a navigable waterway. This is not a case where facts about the relevant uncharged offense were not included in the arrest documents, and the arresting officer later provides previously-undisclosed facts to support probable cause for an uncharged offense. To the contrary, the probable cause affidavits clearly state the facts demonstrating probable cause for the crime of obstructing a navigable waterway, with each beginning as follows:

<u>P&P Officer Ward Probable Cause Affidavit for Arrest of Eric Moll</u>

"While working contract pipeline security for HUB Enterprise, I Probation and Parole Officer Mark Ward witnessed 1 kayak and a canoe blocking a barge from being moved. After repeatedly telling the occupants to move out of the area they continue to block the barge . . . ."[36]

<u>P&P Officer Matherne Probable Cause Affidavits for Arrest of Cynthia Spoon</u>

"On August 9, 2018 at 0845 hours PPO Herman Matherne, while assigned to provide security for HUB Enterprise, witnesses 1 kayak and 1 canoe blocking a barge from being moved into place. After repeatedly telling the occupants to move out of the area, they continued to block the barge and moved into the right of the way of the pipeline. At that time, the occupants of the canoe (Cynthia Spoon . . . and Sophia Cookphillips . . . ) were informed that they were under arrest . . . ."[37]

<u>P&P Officer Matherne Probable Cause Affidavits for Arrest of Sophia Cook-Phillips</u>

"On August 9, 2018, at or around 0845 hours PPO Herman Matherne while assigned to provide security for HUB Enterprise, witnessed 1 kayak and 1 canoe blocking a barge from being moved into place. After repeatedly telling the occupants to move out of the area, they continued to block the barge and moved into the right of the way of the pipeline. At that time, the occupants of the canoe (Cynthia Spoon . . . and Sophia Cookphillips . . . )

---

[36] Doc. 132-20, p. 10 (Officer Ward Affidavit Describing Arrest of Eric Moll).
[37] December 9, 2021 Depo of Herman Matherne, Jr., pp. 104:8-105:1, Exhibit 18, attached as Ex. B.

were informed that they were under arrest  . . . ."[38] The arresting officers then testified to the facts regarding Plaintiffs' blocking the barge.[39]  Plaintiffs were then questioned extensively about their blocking the barge, which elicited the Plaintiffs' testimony cited in Bayou Bridge's motion for summary judgment.[40] Eric Moll was even expressly asked if he was "aware at the time that it would be illegal for you, or Ms. Spoon, or Ms. Cook-Phillips to block a navigable waterway with your canoe or your kayak?"[41] There is no doubt that the facts regarding Plaintiffs' obstructing a navigable waterway were front-and-center in the arrest documents, arresting officers' testimony, and Defendants' questioning of Plaintiffs.

Plaintiffs pled and bear the burden of proving the arresting officers did not have probable cause to arrest them for any crime. Plaintiffs therefore knew from the outset of the case that probable cause for uncharged offenses would be an issue in the case. Regardless, Plaintiffs received early notice of the exact probable cause defense raised by Bayou Bridge in its motion for summary judgment, and there is no legitimate basis for Plaintiffs' argument that they did not have notice of this topic for purposes of pursuing it in discovery.

### C. Plaintiffs' Contradictory and Immaterial Testimony Does Not Create a Fact Dispute about Probable Cause

#### 1. Plaintiffs Present No Evidence to Dispute the Facts Available to the Officers

Plaintiffs have not presented any evidence to rebut the facts demonstrating the arresting officers had facts and circumstances within their knowledge to warrant a person of reasonable caution to believe they were committing the crime of obstructing a navigable waterway. Plaintiffs

---

[38] Ex. B, pp. 113:20-114:11, Exhibit 19 (Cook-Phillips Probable Cause Affidavit attached to Officer Matherne Depo).
[39] Doc. 132-20, pp. 7-8 (Ward Depo, pp. 91:24-92:18); Doc. 132-18, pp. 3-4, 6-9 (Adams Depo, pp. 67:5-68:2, 96:18-97:14; 98:14-99:2); Doc. 132-19, pp. 5-7 (Black Depo, pp. 97:10-99:18); Doc. 132-24, pp. 2-7 (Matherne Depo, pp. 83:20-88:1).
[40] Doc. 132-2, pp. 19-22 (Bayou Bridge Memo in Support of MSJ).
[41] Doc. 132-23, p. 4 (Moll Deposition, p. 198:9-18).

#100938892v4

only present their testimony of their own beliefs about what they were doing and whether they believed they could block a barge.[42] None of the testimony presented by the Plaintiffs addresses the facts within the *arresting officers'* knowledge. Consequently, each fact presented by Bayou Bridge of what the arresting officers actually witnessed is undisputed.

Because the undisputed facts within the officers' knowledge—that the officers witnessed each individual Plaintiff continue to block the barge from being moved despite their telling repeatedly the Plaintiffs to move—would warrant a person of reasonable caution to believe the Plaintiffs were committing the crime of obstructing a navigable waterway, there is no genuine dispute of material fact on the existence of probable cause to arrest Plaintiffs for this crime.

"Probable cause is not a high bar." *Wesby*, 138 S.Ct. at 586. "[T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,'" *Id.* at 588. "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 586. The undisputed facts within the arresting officers' knowledge rise above this bar, demonstrating probable cause. Nothing more is required for summary judgment dismissing Plaintiffs' claims.

### 2. Plaintiffs' Attempt to Change the Statutory Language is Improper and Nonsensical

If the Court does look at Plaintiffs' testimony about their beliefs, Plaintiffs essentially argue that because they were in watercraft of relatively small width, they were not preventing the barge from using the bayou and their position in the middle of the waterway, in front of the barge, is unimportant. In making this argument, Plaintiffs implicitly attempt to add an additional requirement to the statute—that the item obstructing the waterway be of some unspecified width. But this requirement does not exist, and cannot be added by the Court. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as

---

[42] Doc. 173 (Opp. to Bayou Bridge MSJ), p. 28.

written and no further interpretation may be made in search of the intent of the legislature." La. Civ. Code art. 9; *see Guilzon v. Commissioner*, 985 F.2d 819, 823 n. 11 (5th Cir. 1993) ("Clear statutory language is dispositive.").

Plaintiffs' argument runs directly contrary to the plain language of the statute, which is in no need of interpretation, and provides the crime is committed when the obstruction "will render movement thereon more difficult." La. R.S. 14:97. Blocking a barge by placing a canoe and kayak in its path renders "movement thereon more difficult," regardless of the width of the canoe or kayak, because the barge cannot run over the canoe and kayak, and the individuals sitting in them, to get where it is going. The notion that Plaintiffs could not make the barge's movement on the waterway more difficult, due to their canoe and kayak's size, and because the barge could theoretically have run them over, is nonsensical.

To say otherwise is like arguing a person standing on a highway cannot render movement thereon more difficult, because a car or truck can just run them over.

### 3. Plaintiffs' Attempt to Contradict Their Admissions does not Create a Fact Issue

The Plaintiffs' admissions of negligently or intentionally attempting to block the barge are not necessary for the Court to determine probable cause existed, since that is based on the facts possessed by the arresting officers; the admissions just leave no doubt about what the Plaintiffs were doing. The purpose of presenting each Plaintiffs' own testimony showing they negligently or intentionally attempted to block the barge is to demonstrate Plaintiffs cannot legitimately dispute the existence of probable cause.

The testimony presented by the Plaintiffs does not change their admissions that they at least attempted to obstruct movement of the barge. Eric Moll and Cynthia Spoon's testimony that they do not think a barge can be blocked by a kayak does nothing to change their admissions that they

purposefully placed themselves in waterway in front of the barge.[43]  The portion of Sophia Cook-Phillips' testimony stating one of the reasons why she allegedly did not move does nothing to change her admissions that she purposefully placed herself in front of the barge, the barge remained stopped while she was in front of it, and she did not move.[44]  Plaintiffs cannot prevent summary judgment by attempting to present testimony contradicting their own admissions. *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[T]he nonmovant cannot manufacture a disputed material fact where none exists.").

### D.  The Existence of Probable Cause Defeats Plaintiffs' Retaliatory Arrest Claim

Bayou Bridge's motion for summary judgment seeks dismissal of all claims, including Plaintiffs' retaliatory arrest claim, due to the existence of probable cause for the crime of obstructing a navigable waterway. In a footnote, Plaintiffs note that a slightly different standard may apply to their retaliatory arrest claim, but they fail to present evidence allowing themselves to utilize that standard or to allow their retaliatory arrest claim to survive despite probable cause.[45]

In *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019), the Supreme Court held "[t]he plaintiff pressing a retaliatory arrest claim **must plead and prove** the absence of probable cause for the arrest." Emphasis added. However, "a narrow qualification is warranted for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 1727.  In such situations where an officer has probable cause to make arrests but typically exercises their discretion not to do so, "the no-probable-cause requirement should not apply **when a plaintiff presents objective evidence** that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* (emphasis added).

---

[43] Doc. 132-2, pp. 19-21 (Memo in Support of Bayou Bridge Motion for Summary Judgment).
[44] Doc. 132-2, pp. 21-22 (Memo in Support of Bayou Bridge Motion for Summary Judgment).
[45] Doc. 173, p. 25 n. 132 (Opp. to Bayou Bridge MSJ).

#100938892v4

For Plaintiffs to utilize this standard, they must prove their arrests involved "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* Plaintiffs did not plead, do not argue, and do not present evidence that their arrests fit such circumstances, so they cannot utilize this standard and their retaliatory arrest claim fails due to the existence of probable cause for their arrests. *Id.* at 1727-28.

Even if Plaintiffs could utilize this standard, they fail to meet their burden under it. Plaintiffs present no evidence that they were arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been, failing to present any evidence at all about alleged similarly situated individuals. Instead, they argue that they have been precluded from seeking such evidence due to the alleged "belated assertion of probable cause under La. R.S. 14:97 for obstructing a navigable waterway."[46] This is inaccurate, because Plaintiffs' retaliatory arrest claim expressly alleges they were arrested without probable cause, "whether for a violation of the crime alleged in the arrests affidavits or for any other crime."[47] This claim of the Plaintiffs is not tied to the offenses they were charged with, and neither is this objective evidence standard, which presents a factual burden to present evidence that Plaintiffs were arrested when other similarly situated individuals not engaged in the same sort of protected speech had not been. *Id.* Regardless, Plaintiffs received notice months before undertaking discovery that a principal legal issue in the case would be probable cause for the crime of obstructing a navigable waterway, as demonstrated above. Plaintiffs present no legitimate basis to excuse themselves from their burden of satisfying the objective evidence standard. Because Plaintiffs fail to satisfy the objective evidence standard, their retaliatory arrest claim fails due to the existence of probable cause for their arrests.

---

[46] Doc. 173, p. 25 n. 132 (Opp. to Bayou Bridge MSJ).
[47] Doc. 28 (Amended Complaint), ¶¶ 74 (emphasis added).

#100938892v4

### III.    Plaintiffs Fail to Address the Insufficient Pleading of their Retaliatory Arrest Claim

Plaintiffs fail to address that they did not properly allege that their arrests caused them to curtail free speech, as required.  *McLin v. Ard*, 866 F.3d 682, 697 (5th Cir. 2017).  As stated by the Fifth Circuit in *McLin v. Ard*, and as shown by the St. Martin Parish Sheriff Defendants in the reply in support of their motion for summary judgment, which Bayou Bridge adopts and incorporates by reference herein, this is fatal to Plaintiffs' retaliatory arrest claim.[48]

### IV.    Plaintiffs Present No Legal or Factual Basis to Hold Bayou Bridge Liable for the Alleged Intentional Torts of the Probation & Parole Officers and Sheriff Deputies

Plaintiffs fail to present any evidence in support of the allegations that allowed them to survive Bayou Bridge's motion to dismiss—that (1) Bayou Bridge had an arrangement with Sheriff Theriot and the P&P officers to arrest protesters; (2) Bayou Bridge gave specific direction to P&P officers to arrest the Plaintiffs; and (3) Bayou Bridge directed the P&P Officers and Sheriff Defendants to charge Plaintiffs with violations of La. R.S. 14:61.[49] Indeed, **Plaintiffs admit that they have no evidence of any of these things**.[50]

Plaintiffs' only attempt to satisfy one of these allegations is their contrary-to-the-evidence series of unsubstantiated assumptions that the unidentified individual referred to as "Larry" was Bayou Bridge's authorized representative at the site of Plaintiffs' arrests. As demonstrated above, the unsubstantiated assumptions are not evidence of anything—particularly that this individual was an alleged authorized representative of Bayou Bridge or that Bayou Bridge did anything.

Plaintiffs' final focus on the implausible argument that the P&P officers and Sheriff Deputies were Bayou Bridge's independent contractors and employees for whom it can be held

---

[48] Doc. 152, p. 6 (Reply in Support of Sheriff Defendants' MSJ). As shown by the Sheriff Defendants, this failure also renders irrelevant and prevents consideration by the Court of Plaintiffs' declarations about alleged curtailment.[48]
[49] Doc. 42, p. 10 (Plaintiffs' Memo in Opposition to Bayou Bridge's Motion to Dismiss for Failure to State a Claim).
[50] Doc. 173-1, pp. 21, 23 (Response to BBP's Statement of Uncontested Material Facts Nos. 6, 12, 13).

#100938892v4

liable, despite there being no evidence that Bayou Bridge even communicated with them and that they were separated from Bayou Bridge by three levels of independent contractor relationships, is similarly unsupported by law or evidence.

### A. Plaintiffs Present No Authority or Evidence for their Contradictory Arguments that Bayou Bridge Can be Held Liable for the P&P Officers and Sheriff Deputies as both: (1) Independent Contractors; and (2) Bayou Bridge's Employees

Plaintiffs do not attempt to address any of the factors for whether a party is an independent contractor, and do not present any evidence to try and show Hillard Heintze, HUB, the P&P officers, or the Sheriff Deputies were not independent contractors.[51] Instead, Plaintiffs argue Bayou Bridge can be held liable for the alleged intentional torts of the P&P officers and Sheriff Deputies because they allegedly "exercised operational control" over HUB, the P&P Officers, and the Sheriff Deputies. In the section immediately following this argument, Plaintiffs rely on the alleged "exercise of operational control" over HUB to argue Bayou Bridge is therefore the "special employer" of the P&P officers and Sheriff Deputies.

Conceptually, this does not make sense. The P&P officers and Sheriff Deputies are either independent contractors or an entity's employees. They are not both.

The factual backdrop to Plaintiffs' argument that Bayou Bridge exercised control over HUB, the P&P officers, and the Sheriff's deputies shows Plaintiffs' argument is unreasonable. Bayou Bridge has presented uncontradicted evidence that it satisfies the five factors guiding the determination that Bayou Bridge did not have the "right to control the method and means by which" Hillard Heintze "performed the work tasks," and that Hillard Heintze was therefore its independent contractor.[52]  Hillard Heintze is the only security contractor with whom Bayou Bridge

---

[51] The factors are stated on page 16, note 79, of Bayou Bridge's Memo in Support of its MSJ. Doc. 132-2.
[52] Doc. 132-2, pp. 14-17 and nn. 73-79 (Memo in Support of Bayou Bridge Motion for Summary Judgment).

contracted.[53] Plaintiffs admit Hillard Heintze is the only entity with whom Bayou Bridge had substantive security conversations.[54]  Bayou Bridge did not have a contract, communications, or interactions with HUB, the P&P officers, or the Sheriff Deputies, and Plaintiffs have presented no evidence of such.[55] There are no facts to evaluate to determine the relationship between Bayou Bridge and HUB, the P&P officers, and the Sheriff Deputies, because there is no evidence of any relationship. HUB, the P&P officers, and the Sheriff Deputies were not even Bayou Bridge's independent contractors. They were the independent contractors of Hillard Heintze, in the case of HUB, and the independent contractors of HUB, in the case of the P&P officers and Sheriff Deputies.  They are merely third parties to Bayou Bridge—third parties separated by three levels of independent contractor relationships.

## 1. Plaintiffs Do Not State and Cannot Satisfy the Full "Exercise of Operational Control" Standard

Plaintiffs fail to state the full "exercise of operational control standard," leaving out the following crucial requirement found in both of the cases they rely on: "Operational control exists **only if the principal has direct supervision over the step-by-step process of accomplishing the work** such that the contractor is not entirely free to do the work in his own way." *Renwick v. P N K Lake Charles, L.L.C.*, 901 F.3d 605, 613 (5th Cir. 2018) (emphasis added); *Henderson v. Atmos Energy*, 509 F. Supp. 3d 625, 634-35 (E.D. La. 2020) (emphasis added).

Plaintiffs have presented no evidence that Bayou Bridge—who admittedly had no arrangements or substantive security-related communications with the P&P officers or Sheriff Deputies—engaged in direct supervision over the step-by-step process of the P&P officers or

---

[53] Doc. 132-3, ¶¶ 13-15 (Farber Declaration); Doc. 133-4 (Bayou Bridge-Hillard Heintze Contract); Doc. 132-13, p. 11 (Bayou Bridge Revised Second Amended Responses to Plaintiffs' Discovery Requests).
[54] Doc. 173-1, pp. 21 (Response to BBP's Statement of Uncontested Material Facts No. 6).
[55] Doc. 173-1, pp. 21-23 (Response to BBP's Statement of Uncontested Material Facts Nos. 6, 7, 12, 13).

Sheriff Deputies performing their security detail work.[56] Because Plaintiffs cannot satisfy this requirement, Bayou Bridge cannot be held liable for the alleged intentional torts of these third parties, with whom Bayou Bridge did not even contract or provide a scope of work, but who were the independent contractors of other parties.  For this reason,[57] and more importantly because Plaintiffs do not accurately state or attempt to satisfy the special employer standard,[58] the P&P officers and Sheriff Deputies also cannot be considered Bayou Bridge's special employees.[59]

---

[56] Doc. 173-1, pp. 21, 23 (Response to BBP's Statement of Uncontested Material Facts Nos. 6, 12, 13).

[57] Plaintiffs claim Bayou Bridge is a "special employer" based on alleged "exercise of control." Doc. 173, p. 21 (Opp. to Bayou Bridge MSJ). But *Morgan v. ABC Mfr.*, 97-0956 (La. 05/01/98); 710 So. 2d 1077, 1083, cited by Plaintiffs, does not allow special employer determinations on the basis of "exercise of control," and neither does any other case cited by Plaintiffs. *Morgan* addressed the traditional test for whether the alleged special employer had the "right of control" over the allegedly borrowed employee, but then disavowed control as part of its specific analysis—"whether a general or lending employer who is in the business of hiring out temporary employees to other business is liable for its borrowed employee's tortious conduct while in the performance of his work with the borrowing employer." *Id.* at 1078, 1081, 1083, 1084. *Morgan* concluded "enterprise liability" is the appropriate concept for this determination, rather than control, and that "where, as here, a general employer is in the business of hiring its employees out under the supervision of others, the general employer remains liable for the 'borrowed' employees' torts under La. Civ. Code art. 2320." *Id.* at 1084. Plaintiffs present no evidence HUB is a general employer that hires its employees out under the supervision of others, or how, if such evidence existed, this could make Bayou Bridge liable. Plaintiffs' "exercise of control" argument is irrelevant, unsubstantiated, and is no basis for liability on Bayou Bridge.

[58] "A determination of whether a particular employer is a 'special employer' or a particular employee is a 'borrowed servant' is really one and the same. A finding of one necessitates a finding of the other; a special employer is one who has borrowed another's regular employee and made him his own borrowed servant." *Lambert v. James A. Teague Rental Equip., Inc.*, 278 So. 2d 544, 547 (La. App. 1 Cir. 1973); *see Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 307 F. Supp. 3d 535, 565 (M.D. La. 2018) (stating similarly). "The party who alleges that an employee has become a borrowed servant bears the burden of proof." *Marzula v. White*, 431 So. 2d 858, 861 (La. App. 2 Cir. 1983). The factors to be considered in determining whether a particular employee becomes a borrowed servant are: "(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?; (2) Whose work is being performed?; (3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer; (4) Did the employee acquiesce in the new work situation?; (5) Did the original employer terminate his relationship with the employee?; (6) Who furnished the tools and place for performance?; (7) Was the new employment over a considerable length of time?; (8) Who had the right to discharge the employee?; and (9) Who had the obligation to pay the employee?." *Smith v. Two "R" Drilling Co.*, 606 So. 2d 804, 812-13 (La. App. 4 Cir. 1992). The initial factor is not "exercise of control," but "the 'right of control,' which includes the determination of whether the general employer has relinquished its right to control the employee." *Ferguson v. Lambert*, 501 So. 2d 911, 913 (La. App. 5 Cir. 1987)." "In order to prevail on the issue of control, the party alleging the employee is a borrowed servant must show that the relationship between the 'general' employer and the worker has been suspended, and that a new and like relationship has been created between the worker and the 'special" employee.'" *Ferguson*, 501 So. 2d at 913. "There is a presumption that the general employer retains control over the employee." *Smith*, 606 So. 2d 804, 813 (La. App. 4 Cir. 1992). "[A] mere showing of division of control is not enough to meet" the Plaintiffs' burden.  *Marzula*, 431 So. 2d at 861.

[59] Plaintiffs have not presented evidence that Bayou Bridge obtained the "right of control" over any HUB employees, P&P officers, or Sheriff Deputies. They cannot, because Bayou Bridge admittedly had no arrangements with HUB, P&P, or the Sheriff Defendants.  Doc. 173-1, pp. 21-23 (Response to BBP's Statement of Uncontested Material Facts Nos. 6, 7, 12, 13). As shown herein, the evidence cited for "exercise of control" is not evidence of any type of control. Plaintiffs have presented no evidence to show the relationship between any HUB, P&P, or Sheriff Defendants and

23

2. **Plaintiffs Present No Authority for the Argument that "Exercise of Operational Control" Over an Independent Contractor Somehow Imputes the Principal with Liability for Third Parties Who Contracted with the Independent Contractor**

Unable to satisfy the only relevant question—whether Bayou Bridge exercised operational control over the P&P officers and Sheriff Deputies—Plaintiffs attempt to satisfy their own, self-created standard. The standard they create, without any authority, is that Bayou Bridge could be held liable for the alleged intentional torts of the P&P officers and Sheriff Deputies if, through Hillard Heintze, Bayou Bridge exercised operational control over HUB.[60] This theory, although difficult to grasp, would require authority for each of the following: (1) that Bayou Bridge could somehow "exercise operational control," i.e. *directly* supervise the step-by-step performance of work, of HUB, through Hillard Heintze; and (2) that any such "direct" supervision by Hillard Heintze of the step-by-step performance of work by HUB means Bayou Bridge is directly supervising the step-by-step performance of work by the P&P officers and Sheriff Deputies. Plaintiffs present no authority for any of these inexplicable premises, which run expressly contrary to the concept of directly supervising and exercising control over someone else's work. If you hire a contractor to build your house, would your general contactor's alleged exercise of control over a subcontractor mean you, as owner, have directly supervised the step-by-step work of the contractor's subcontractors, and all of the subcontractor's subcontractors? No, it would not. The owner could not be held to have controlled anyone, even the general contractor.

Even so, Plaintiffs present no evidence of Bayou Bridge exercising operational control over Hillard Heintze, or Hillard Heintze exercising operational control over HUB—neither of which

---

their actual employer was suspended, and that a new and like relationship was created with Bayou Bridge. Plaintiffs have not presented evidence of division of control, which itself is insufficient to satisfy Plaintiffs' burden. Nor have Plaintiffs attempted to present evidence of Bayou Bridge involvement with any HUB, P&P, or Sheriff Office employee to satisfy any other factor in the special employer/borrowed servant analysis, so that Plaintiffs could overcome the presumption that a general employer retains control over its employee.

[60] Doc. 173-1, pp. 21-23 (Response to BBP's Statement of Uncontested Material Facts Nos. 6, 7, 12, 13).

#100938892v4

could lead to Bayou Bridge being liable for the alleged intentional torts of other third parties in any event.  As stated in the cases Plaintiffs rely on, the following is not sufficient to constitute "exercise of operational control":

> It is not enough, however, that the principal has merely a general right to order the work stopped or resumed, **to inspect its progress or to receive reports**, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations.

*Renwick*, 901 F.3d at 613 (emphasis added). Nor is onsite monitoring of a party's work—which Bayou Bridge is not even alleged to have done—sufficient to constitute control. *Ham v. Pennzoil Co.*, 869 F.2d 840, 841-42 (5th Cir. 1989)

On their face, none of the "facts" presented by Plaintiffs are evidence sufficient to constitute "exercise of operational control," even though many of them are incomplete or, inaccurate.  They include Bayou Bridge receiving information, which is not control of anyone; getting a TRO against an illegal trespass, which is not control of anyone; and discussing the effect of a Louisiana law, which is not control of anyone.  Nor are the "facts" which appear to more specifically address Hillard Heintze or HUB.

<u>Hillard Heintze</u>

Plaintiffs present "facts" that Bayou Bridge's contract with Hillard Heintze reserved the right to reject subcontractors and did not reject HUB, that Bayou Bridge allegedly directed Hillard Heintze to increase law enforcement officers as security and reduce non-law enforcement security guards, and that Eddie Langlinais of Hillard Heintze participated in a conference.

Not rejecting Hillard Heintze's contracting of HUB is not an affirmative action and is therefore incapable of being considered "control." This is particularly true since Hillard Heintze "planned to subcontract part of the services with HUB," and for Bayou Bridge "[t]here was – there

was no approval or disapproval.  We were – I was made aware that they were hiring HUB as a subcontractor, and I did not object."[61]

The "fact" about Bayou Bridge directing use of law enforcement officers is not supported by evidence.  The document mentioning this increase is an email by Hillard Heintze to Bayou Bridge's former Senior Director of Security, Russell Sweeney, describing Hillard Heintze's plans, and contains no input or directives by Mr. Sweeney or anyone from Bayou Bridge.[62]  When asked why there was a need to increase law enforcement officers, Mr. Sweeney testified "I don't know the answer to your question. This would have been something that would have been discussed between Mr. Orloff and Mr. Hunt or Mr. Langlinais and Mr. Monachello."[63] He also confirmed "Simply this discussion that Mr. Orloff having here is financial in nature. It's not talking about resources or what resources will be used. It's talking about costs."[64] This "fact" is an unsubstantiated assertion that does not evidence control of anyone by Bayou Bridge.

HUB

The "facts" presented about Bayou Bridge's alleged control of HUB are that HUB allegedly hired P&P officers and Sheriff Deputies after Bayou Bridge allegedly directed Hillard Heintze to increase law enforcement officers as security and reduce non-law enforcement security guards, which HUB allegedly acted upon, and that a draft, unapproved, unfinalized, never-used Site Security Plan allegedly required HUB to have its post orders approved by Bayou Bridge and required HUB's security supervisor to report to Bayou Bridge's project security manager.

As with the unsubstantiated assertion that Bayou Bridge directed the use of law

---

[61] Doc. 159-3, p. 6 (Russell Sweeney Deposition Excerpt, p. 57:1-12).
[62] Doc. 174-9 (Aug. 13, 2018 email by John Orloff to Russell Sweeney re: Additional Resources Authorization).
[63] January 19, 2022 Depo of Russell Sweeney, pp. 110:10-112:16, attached as Ex. C. All listed persons were Hillard Heintze employees. Ex. A, p. 32:4-23 (Winch Depo).
[64] Sweeney, Ex. C, pp. 112:18-113:7 (Sweeney Depo).

enforcement instead of other security guards, Plaintiffs present no evidence that HUB hired P&P officers or Sheriff Deputies as a result of this non-existent alleged directive. The documents Plaintiffs cite do not include, involve, or reference hiring anyone at Bayou Bridge's direction.[65]

The "facts" related to the draft, unfinalized, never-used Site Security Plan likewise do not provide evidence to support a finding of control. The Site Security Plan was a draft document, that was never finalized, never used, composed of Hillard Heintze and HUB's policies, and by which Bayou Bridge did not create responsibilities for any contractor or subcontractor, or control the means and methods by which they performed their scope of work.[66] The sole fact that this document was never used demonstrates it did not involve Bayou Bridge actually exercising control over anyone. Even if the document had actually been used, Plaintiffs present no evidence that Bayou Bridge received, reviewed, or approved HUB's post orders, or that HUB reported to anyone at Bayou Bridge. Rather, Plaintiffs admit Bayou Bridge had no substantive security-related communications with HUB, and that its only communications with HUB that were produced in discovery were to welcome HUB aboard.[67] These draft document provisions do not show Bayou Bridge actually directly supervised HUB, as is required for "exercise of operational control."

## V.    Plaintiffs' False Detention and Imprisonment Claims are Undisputedly Duplicative

Plaintiffs fail to address the law stating false detention and imprisonment claims are duplicative of a false arrest claim, so the claims should be dismissed.[68]

Respectfully submitted,

*/s/ F. Gibbons Addison*
James C. Percy (La. Bar No. 10413) (Lead Attorney)
F. Gibbons Addison (La. Bar No. 35426)
Jones Walker, LLP

---

[65] Doc. 173, p. 20 and n. 104 (Corrected Opposition to Bayou Bridge MSJ).
[66] Ex. C, pp. 92:9-21, 140:8-142:23 (Sweeney Depo).
[67] Doc. 173-1, pp. 21-22 (Response to BBP's Statement of Uncontested Material Facts Nos. 6-7).
[68] Doc, 132-2, p. 23 (Bayou Bridge Memo in Support of MSJ); Doc. 173, p. 33 (Opp. to Bayou Bridge MSJ).

#100938892v4

445 North Boulevard, Suite 800
Baton Rouge, Louisiana  70802
Telephone: (225) 248-2130
Fax: (225) 248-3160
Email:  jpercy@joneswalker.com
Email:  gaddison@joneswalker.com
*Attorneys for Bayou Bridge Pipeline LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2023, a copy of the foregoing was filed electronically using the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all known counsel of record by operation of the Court's electronic filing system.

*/s/ F. Gibbons Addison*
F. Gibbons Addison

28