# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

CYNTHIA SPOON, et al          *   CIVIL ACTION

VS.                                *

BAYOU BRIDGE PIPELINE, LLC, et al    *   NO. 3:19-CV-00516-SDD-EWD

*********************************************************************

### ST. MARTIN PARTIES' REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

**MAY IT PLEASE THE COURT:**

Defendants, Deputies Sharay Arabie, Stacey Blanchard, Troy Dupuis, Gabe Gauthier, Waversun Guidry, Norris Huval, and Chris Martin (the "Deputies"), and former St. Martin Parish Sheriff Ronald Theriot (collectively, the St. Martin Parties), submit this Reply Brief in support of their Motion for Attorneys' Fees and Expenses (Doc. 203) and in response to Plaintiffs' opposition memorandum (Doc. 212).

In response to the St. Martin Parties' five-page memorandum Plaintiffs have filed a 37-page opposition. Almost all of the opposition misses the point. All of the discussion about probable cause or the changing case law on retaliatory arrest has no bearing on Deputies who did not make the arrests. Plaintiffs argue that they were presenting a controversial theory in an "unsettled area of law" in a good faith attempt to extend the law. But the area of law at issue in this argument is not probable cause or retaliation; it is the definition of an arrest, and the difference between an investigatory stop (reasonable suspicion, brief detention) and an arrest (probable cause, extended detention, no further investigation). Those matters are firmly settled.

The Probation & Parole officers made the arrests; they did not perform an investigatory stop. The conduct that prompted the arrests took place in full view of the Probation & Parole Officers, whether it be obstructing the barge or intruding into the right-of-way. Plaintiffs were

taken from their canoe (Spoon and Cook-Phillips) or chased down in the water (Moll), handcuffed, and taken ashore. They were clearly under arrest when Deputies Dupuis and Gauthier later arrived and summoned transportation to St. Martinville. There has never been any evidence that some further investigation was required, or that the Deputies performed an investigation and arrested Plaintiffs based on the results.

Even now Plaintiffs continue to distort the undisputed facts of the case. For example, Plaintiffs argue at page 25 of their Opposition that the St. Martin Parties "admit that they took Plaintiffs into custody and were involved in their transportation to jail." All of the citations to the record listed in support of this statement deal with admissions that Deputies provided the transportation to the jail; none deal with taking Plaintiffs "into custody." As we demonstrated repeatedly, Plaintiffs were already in custody when Deputies Dupuis and Gauthier arrived. Probation & Parole officers accompanied Plaintiffs to the jail, maintaining custody. (Doc. 89-3 at 72:12-73:5.) There is no evidence that any Deputies "took Plaintiffs into custody" and there is no admission to that effect in the cited materials. Plaintiffs argue in several places that this Court found that Probation & Parole officers "initiated" the arrests, as though the arrests were then completed by others. (See pages 18, 19, 24, and 26 – "initial physical seizure.") We have not found any passage in the Ruling of July 17, 2023 (Doc. 207) where this Court spoke of "initiating" an arrest. Probation & Parole officers did not simply "initiate" the arrests, they made the arrests. They were the only ones who made the arrests. There has never been any evidence for any other scenario.

Plaintiffs again rely upon *Williams v. County of Nassau*, No. 14-CV-5959, 2016 WL 6994312 (E.D.N.Y. Nov. 30, 2016) to support their argument about an ongoing or protracted arrest. As we noted on page 1 of our Reply Memorandum in Support of the Summary Judgment (Doc.

152), however, *Williams* does not support Plaintiffs' argument.  In that case Mr. Williams was initially stopped for investigation by Nassau County officers.  The stop was based on the alleged statement of an unknown male that men wearing clothes matching those of plaintiff and his companion had been involved in a stabbing.  (There was no mention of this unknown male in the reports.) The Nassau County officers approached the plaintiff and his companion and saw the companion throw something behind a parked car.  The Nassau County officers then frisked and handcuffed the two men as they started investigating.  They recovered a knife thrown by the companion and a bloody towel in the possession of the plaintiff.  Then Village of Hempstead officers arrived.  The "Village Defendants" took possession of the bloody towel, placed their own handcuffs on plaintiff and his companion, placed the two men in separate squad cars, and transported them to another location for the victim to identify them.  The victim exonerated the plaintiff, but plaintiff was taken to the Hempstead Police Department anyway, where he was held for about 40 minutes before being taken to the Nassau County Police Department where he was booked.  The Village Defendants moved for summary judgment arguing that they had simply transported the plaintiff after he was already under arrest.  The Court denied summary judgment, noting that "handcuffing an individual, placing him in a police car, and transporting him to another location can constitute unlawful arrest and seizure absent probable cause." *Id.*, p. 6.  The Court cited *United States v. Perea*, 986 F.2d 633, 644-45 (2 Cir. 1993) for its discussion of "factors that might transform a *Terry* stop into a *de facto* arrest." *Id.*  In the present case, by contrast, there was never a *Terry* stop; there was an arrest by Probation & Parole which required the arrestees to be promptly transported to the jail for booking.

The St. Martin Parties raised qualified immunity in their Motion for Summary Judgment, and they agree that attorneys' fees and costs are not warranted if they had prevailed only on

qualified immunity.  But they also raised the issue of the simple lack of causation because they did not make the arrests (Doc. 89-2, p. 1.), and the established, controlling case law providing that they have no duty to investigate the probable cause supporting the arrests before arranging for transportation to the jail (*Westfall v. Luna*, 903 F.3d 534, 547 (5 Cir. 2018)).  Likewise, there can be no *Monell* liability on the part of the Sheriff where the Deputies did not cause the violation of a constitutional right.  The Memorandum in Support of the Motion for Attorneys' Fees and Expenses is based on the lack of causation, not qualified immunity.

Plaintiffs argue that the cases dealing with a late-arriving officer are not squarely controlling precedent because they do not foreclose Plaintiffs' theory of what constitutes an arrest. The cases that we cited dealing with a late-arriving officer squarely foreclose the argument that such an officer has a duty to inquire about probable cause for the arrests.  The definition of an arrest has been squarely addressed by other cases, including those cited by Plaintiffs at page 17 of their Opposition to the present motion, namely *California v. Hodari D.,* 499 U.S. 621, 627-28 (1991), and *United States v. Morris*, 40 F.4th 323, 327 (5 Cir. 2022).  The test is whether a reasonable person would believe that he was not free to leave.  Surely being hauled out of the water, placed in handcuffs, and being forcibly brought ashore fit this definition.  Plaintiffs' argument that such steps were somehow just the initial phase of an arrest that was later completed by the Deputies is squarely foreclosed by the cases they cited.  Indeed, in the *Hodari D.* case, the Court observed the comparison to *Thompson v. Whitman,* 18 Wall. 457, 471, 21 L.Ed. 897 (1874) (dealing with seizure of a vessel), which held "A seizure is a single act, and not a continuous fact."

Plaintiffs criticize the St. Martin Parties for not filing a motion under Rule 12, thereby obtaining an earlier dismissal.  They seem to forget that their First Amended Complaint (Doc. 28) alleged that all the Defendants "acted jointly to unlawfully arrest Plaintiffs," that while boating in

open waters Plaintiffs encountered the barge "accompanied by representatives of HUB Enterprises, P&P Officers . . . along with St. Martin Parish Sheriff's Office deputies . . . (Par. 1). The first numbered paragraph concludes with this sentence: "The officers and deputies arrested Plaintiffs at the direction of representatives of Bayou Bridge Pipeline, LLC and HUB Enterprises." (Emphasis added.)  In paragraphs 17 – 23 each of the Deputies is named and alleged to have "participated in Plaintiffs' arrests on Aug. 9, 2018." They alleged that the actions of Probation & Parole were an "initial detention."  (Par. 53.)  They alleged that "SMPSO Defendants Arabie, Dupuis, Gauthier, Huval and Martin took Plaintiffs into custody . . ." (Par. 54.)  They specifically alleged that "Defendant SMPSO Deputies Stacey Blanchard and Waversun Guidry reported to the sited at issue during the time period at issue, were present for Plaintiffs' arrests, and either directly participated in or failed to prevent their unlawful arrests."  (Par. 55.)  There is no chance that a motion under Rule 12, based solely on the pleadings, would have resulted in dismissal of the suit. Plaintiffs did not make it plain in their pleadings that they were advancing an argument for an expanded definition of an arrest to include anyone involved in simply transporting the arrestees. We started work on the summary judgment motion quite early, but even after the videos of the events were produced, it was necessary to await the depositions of the Plaintiffs because of potential gaps in the videos.  Unfortunately, once the depositions started and before the transcripts could be finished, Plaintiffs noticed over 20 additional depositions.

With regard to the offer of settlement, we understood that such an offer was required by the Court's scheduling order.  The offer by the St. Martin Parties was to forego any motion for attorneys' fees if Plaintiffs would dismiss them from the suit.  The fact of such an offer should not undermine the claim for attorneys' fees.

With respect to the redactions in the invoices for legal services, we have endeavored to redact the parts of the bills that reflect client communications or attorney work product/thought processes.  We have no objection to an *in camera* inspection of the unredacted invoices should the Court so request.

For all of the foregoing reasons, this Court should grant the St. Martin Parties' Motion for Attorneys' Fees and Expenses and award judgment against the Plaintiffs in the amount of $149,044.95.

Respectfully submitted,

OATS & MARINO
A Partnership of Professional Corporations

_____*/s/ Patrick McIntire*_____
PATRICK B. McINTIRE (La. 17052)
100 E. Vermilion Street, Suite 400
Lafayette, La. 70501
Ph.  337-233-1100
pmcintire@oatsmarino.com
*Counsel for Sheriff and Deputies*

6